Louis RICARTE, Jr., a/k/a Louis VALDEZ, a/k/a
Alexander VALDEZ *v.* STATE of Arkansas

CR 86-31 717 S.W.2d 488

Supreme Court of Arkansas
Opinion delivered October 13, 1986

*Wright & Hamilton*, by: *Fielding Wright*; and *Martin, Vater & Karr*, by: *Charles Karr*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant Ricarte was convicted of three counts of aggravated robbery, three counts of kidnapping, and two counts of theft of property. As an habitual criminal with 10 prior convictions he was sentenced to life imprisonment on each count of aggravated robbery and to 30 years plus a $15,000 fine on each of the other counts. The trial court made the sentences run consecutively.

Counsel for the appellant have listed 18 points for reversal, but only the first eight are argued in their brief. It being a life imprisonment case, we have considered all the points. We must reverse the convictions because Ricarte's wife was permitted, over a proper objection, to testify against him. We need not discuss all of the other 17 points, for some will not arise upon a second trial and others are so obviously lacking in merit as not to be considered. *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

The crimes took place on the evening of March 2 and the morning of March 3, 1982, in Fayetteville. The case was not tried until July 15, 1985, for the robbers followed a carefully laid plan and left scant clues as to their identity. It is not necessary for us to relate the facts in detail.

Four men acted together in committing the crimes. One was not an active participant; he merely monitored police calls on a scanner so that he could warn the others by telephone if the police were alerted by an alarm system. There was no alert.

At about 9:00 p.m. on March 2 the other three, Ricarte, Brannen, and Clark, entered the home of Robert H. Perry, who owned a jewelry store in Fayetteville. Two of the men were rather inadequately disguised. The third man, Ricarte, was completely

covered by means of a ski mask, a jogging suit, gloves, and shoes. Brannen testified that Ricarte did not want his skin color to be seen, because he is an Indian. The three men, who were armed, handcuffed Perry and his wife and son. Brannen and Clark explained the robbers' plan to remain at the Perry home all night and rob the jewelry store early the next morning. That plan was successfully carried out; both the Perry home and the store were robbed. The total take had a retail value of about a million dollars, with the wholesale value being about half that. Ricarte actively participated but maintained his anonymity by never speaking except in a whisper inaudible to the Perrys. One of the three, Brannen, was eventually arrested after prolonged and painstaking police work. Brannen joined the Federal Witness Protection Program, gave the FBI information about the robbery, and testified against Ricarte at the trial.

■ On July 12, 1985, three days before the trial began, Ricarte and Susan Schneider were married in Arkansas. When the State called Mrs. Ricarte as a witness, counsel objected on the ground that under Arkansas law the State cannot call one spouse as a witness against the other. The State relied on Uniform Evidence Rule 504(b), by which only confidential communications between spouses are privileged. The defense insisted that the Uniform Rules of Evidence were not validly adopted by the legislature, because at the time of their adoption the legislature was unlawfully in session in January, 1976, almost a year after the 1975 regular session had ended. That practice of continuing the legislature in session after its regular 60-day session has ended is not permitted by the Arkansas Constitution. *Wells* v. *Riviere*, 269 Ark. 156, 599 S.W.2d 375 (1980). The trial judge overruled the objection on the ground that a marriage three days before trial should not create a privilege.

■■ The objection should have been sustained. The Uniform Rules of Evidence were adopted at an invalid session of the legislature. Under the *Wells* case they did not become law. That being true, our earlier statute, Act 14 of 1943, was not affected by the repealing clause in the Uniform Rules. The 1943 statute provides that in a criminal case one spouse cannot be called by the opposite party as a witness against the other spouse. The statute makes no exception for a marriage that was or may have been entered into for the purpose of shielding one spouse from the

testimony of the other. The point has been ruled upon in six or more jurisdictions, with all the courts enforcing the particular statute as it was written. See Wigmore on Evidence, § 2230 (1961).

We have been concerned about the topsyturvy condition that would come about if the Uniform Rules were abruptly cast out. There would be great confusion. Judges and lawyers would have to relearn the older, inferior rules of evidence. Many trial errors would occur. A host of new trials would follow. And costly timeconsuming appeals would prolong the difficulties.

■ We think our best course is to avoid all those unfortunate possibilities, simply and quickly. Under our own rulemaking power and under existing statutory authority, as of this date we adopt the Uniform Rules of Evidence as the law in Arkansas. We have no misgivings about either the validity of our action or its wisdom, but a few comments are appropriate.

For more than fifty years there has been a steady trend in favor of committing to the courts the regulation of practice and procedure. Dean Wigmore took a strong stand in the matter as early as 1928. Editorial, 23 Ill. L. Rev. 276. Many others agreed. In 1940 the American Bar Association chose as the subject for its annual Ross essay contest: "To What Extent May Courts under the Rule-Making Power Prescribe Rules of Evidence?" the winning essay by Prof. Thomas F. Green, Jr., argued persuasively that all rules of evidence are properly subject to the courts' rulemaking power. 26 A.B.A.J. 482 (1940). Other pertinent articles include another Ross essay submitted by Charles A. Riedly, 26 A.B.A.J. 601 (1940); Morgan, "Rules of Evidence—Substantive or Procedural?," 10 Vanderbilt L. Rev. 467 (1957); and Joiner and Miller, "Rules of Practice and Procedure: A Study of Judicial Rule Making," 55 Mich. L. Rev. 623 (1957).

■ Arkansas has kept step with the progress made elsewhere. Our Constitution of 1874 confers upon the Supreme Court "a general superintending control over all inferior courts of law and equity." Art. 7, § 4. We note in passing that the Supreme Court of New Mexico relied on almost that identical language in the New Mexico constitution as authority for the court's action in adopting the Uniform Rules of Evidence as the law in that state. *Ammerman* v. *Hubbard Broadcasting, Inc.*, 89 N.M. 307, 551

P.2d 1354 (1976), where the court analyzed in depth its rule-making power.

█ In 1971 the Arkansas legislature used mandatory words in committing the regulation of criminal practice and procedure to this court:

> The Supreme Court of the state of Arkansas shall have the power to prescribe, from time to time, rules of pleading, practice, and procedure with respect to any or all proceedings in criminal cases.

Ark. Stat. Ann. § 22-242 (Supp. 1985). That action was not an improper delegation of legislative power; it merely recognized the court's inherent power. *Miller* v. *State*, 262 Ark. 223, 555 S.W.2d 563 (1977). The statutory language quoted above was repeated in a 1973 statute by which the legislature recognized the Supreme Court's power to prescribe rules with respect to procedure in civil cases. § 22-245. Under those statutes we have adopted the Rules of Criminal Procedure and the Rules of Civil Procedure. More recently we adopted rules for the certification of court reporters. We are not the first court to adopt the Uniform Rules of Evidence by judicial action. That step has been taken not only in New Mexico, as mentioned earlier, but also in Florida, *In re Florida Evidence Code*, 372 So.2d 1369 (1979); in Montana, Montana Rules of Evidence, Ch. 10, Mont. Code Ann. (1984); and in Wisconsin, *In re Promulgation of Rules of Evidence*, 59 Wis. 2d R1-R377 (1973). The Supreme Court of the United States adopted the Federal Rules of Evidence pursuant to federal statutes quite similar to the 1971 and 1973 statutes enacted in Arkansas. See Reporter's Note, 409 U.S. 1132 (1972).

█ Even though our order formally adopting the Uniform Rules is effective today, Ricarte is entitled to a new trial, for his wife should not have been allowed to testify for the State. Since the invalidity of the statute adopting the Rules was properly raised at the trial, Mrs. Ricarte's right to claim the statutory privilege must in fairness be recognized at a new trial.

█ A second argument is that the court should have granted a mistrial when the prosecutor said in his opening statement that Ricarte had been in the penitentiary and also when a witness made that statement. The evidence was relevant,

because the plan for the robbery was conceived by inmates who were in the penitentiary and a key witness for the State identified Ricarte as the man called "Chief" whom he had known in the penitentiary. Since the fact of Ricarte's incarceration was admissible and was proved, the prosecutor was entitled to refer to it in his opening statement. See *Rhodes v. State*, 290 Ark. 60, 716 S.W.2d 758 (1986).

■ Another argument is that the court should have instructed the jury that two witnesses were accomplices as a matter of law. One of them, Brannen's girlfriend at the time, testified that he told her to pick up a scanner at a motel a day or so after the robbery and that when she took it to Ricarte's house at Fayetteville she saw many pieces of jewelry on a bed: "Scads of it. There was a lot, a bed-full." There is no proof that she participated in the robbery. To the contrary, she said that when she saw the jewelry she was scared. The other witness was the one who had known Ricarte in the penitentiary as Chief. He recognized Ricarte as being Chief when Ricarte exchanged some of the jewelry for drugs, but there is no proof that the witness knew where the jewelry had come from. Neither of the two witnesses was shown to be an accomplice as a matter of law, their status being at most an issue for the jury.

■ Upon another point the appellant attacks the constitutionality of the statute permitting the judge to instruct the jury that a defendant has a certain number of previous convictions, which is what the judge did in this case. Ark. Stat. Ann. §§ 41-1003 and -1005 (Supp. 1985). We upheld that procedure in *Shockley v. State*, 282 Ark. 281, 668 S.W.2d 22 (1984), saying that the number of previous convictions is a matter of law. See case note, 39 Ark. L. Rev. 553 (1986). In the *Shockley* case, however, and in this case as well, the proof of previous convictions was undisputed. Consequently it was proper in both cases for the judge to inform the jury of facts not in dispute. AMCI 7001-A and Comment thereto (1982). If the existence or validity of one or more previous convictions is disputed by testimony offered by the defendant, the issue may be submitted to the jury by the use of AMCI 7001. Here there was no issue of fact for the jury; so the court's actions were correct.

■ The last point we need mention is the trial court's denial of a defense request that a pre-sentence report be obtained

and be given to the jury when the issue of punishment was submitted. The statutes do not contemplate that procedure when punishment is to be fixed by the jury, and for good reasons. The report would be a waste of time and money whenever the defendant is acquitted. And when he is found guilty in the first stage of a bifurcated trial, there would be serious practical difficulties in allowing the jury to separate for an indefinite period while the defendant's background was being investigated. The legislature may well have concluded that when a defendant has a record of previous convictions—ten in this instance—the issue of punishment should be submitted on that record alone, without a pre-sentence investigation.

Reversed and remanded.

HAYS, J., dissents.