Junior CURTIS *v.* STATE of Arkansas

CR 89-193                                     783 S.W.2d 47

Supreme Court of Arkansas
Opinion delivered January 29, 1990
[Rehearing denied March 5, 1990.*]

---

*Price, J., not participating.

*Edward T. Barry*, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant was convicted of the rape of his girlfriend's seven-year-old daughter. We affirm the conviction.

Appellant's primary point of appeal is that Ark. Code Ann. § 16-44-203 (1987), the statute which authorizes the videotaping of the testimony of a young victim of a sexual offense, is unconstitutional because it is procedural in nature and, under the

separation of powers doctrine, only courts can promulgate rules of court procedure.

■ The rule-making power of courts comes from three (3) sources: (1) inherent in the constitutional separation of powers, (2) express constitutional grant, or (3) enabling legislation. There is no real question about the existence of the court's rule-making power, the only questions in this case concern the scope and exclusiveness of that power.

We have long had rules of court, possibly as far back as 1457. Joiner & Miller, *Rules of Practice and Procedure: A Study of Judicial Rule Making*, 55 Mich. L. Rev. 623 (1957). In 1927, Dean Roscoe Pound pointed out the defects in legislative regulation of court proceedings. Pound, *Regulating Procedural Details by Rules of Court*, 13 A.B.A.J. 12 (1927). By 1928, Professor Wigmore was arguing that all legislatively created rules of practice and procedure were constitutionally void. Wigmore, *All Legislative Rules for Judiciary Procedure Are Void Constitutionally*, 23 Ill. L. Rev. 276 (1928). In the past twenty-five years the courts in many states have exercised their rule-making power. We are no exception. By rule, we have adopted the Arkansas Rules of Civil Procedure, the Arkansas Rules of Criminal Procedure, and the Arkansas Rules of Evidence. *See Ricarte* v. *State*, 290 Ark. 100, 717 S.W.2d 488 (1986).

Unfortunately, however, there is a crepuscular, or twilight, zone which makes it difficult to determine whether the legislature or the judiciary should establish some procedures. A paper which was prepared for the purpose of making recommendations to the Michigan Legislature, Supreme Court of Michigan, and the Michigan State Bar for the revision of Michigan procedural statutes and rules is informative. In the paper, Joiner and Miller, *Rules of Practice and Procedure: A Study of Judicial Rule Making*, 55 Mich. L. Rev. 623, 628-29 (1957), the authors explain:

> In Michigan, as in the political structure of the federal government and many states, the powers of government are divided in the traditional American pattern between the legislative, executive, and judicial branches. The judicial power is vested in the constitutionally created courts and such other courts as may be created by the legislature.

Wigmore argues in an editorial referring to the pattern of government in Illinois (similar in this respect to that of Michigan) that all legislatively created rules of practice and procedure were constitutionally void, basing his argument on the logic of the constitution itself and the policy and experience with court rules and legislatively prescribed procedure. Two courts have recognized the validity of this argument. In other words, giving effect in fullest measure to the theory of separation of powers, the judicial branch, and only the judicial branch, would be authorized to promulgate rules regulating court procedure. Some writers have taken Wigmore's argument as jeu d'esprit while another has taken it as a serious attempt to justify the judiciary's exercise of a complete and exclusive rule-making power. However, the better interpretation of Wigmore's editorial would seem to be that he was pointing up the supremacy of judicially created rules of practice and procedure in the event of conflict with legislative rules and refuting the legislators who argued that rule making was a legislative power and could not constitutionally be delegated to the judicial branch.

As interpreted by Dean Pound, Wigmore's proposition was that "if every power exercisable in government must go exclusively and as a whole into one of the three categories, the power of making detailed rules of legal procedure is analytically judicial—it is inherent in the exercise of the power committed to the judiciary of determining controversies and applying laws." It is submitted that Wigmore was underlining the fallacy of a strictly logical chain of reasoning as concerns the classification of those powers exercisable by the three branches of government. In this connection it should be remembered that political science has also abandoned the theory of complete and exclusive authority over precisely delineated spheres of activity. It is well established that the operational areas of everyday governmental functions are not defined with precision and are not capable of assignment to distinctive categories; instead there is and always has been a twilight zone of indefinition, wherein the functions and activities of the three branches overlap and conflict, and

wherein cooperation among the three branches has been the key to the resolution of the conceptual puzzle. Therefore, it is submitted that while a purely theoretical argument can be made for total and exclusive possession of the rule-making power by the judiciary, such a position ignores the realities of practical operational techniques necessarily utilized in government and presumes that a total separation of powers is possible. The conclusion should rather be that theory must give way to reality. It must be recognized that there are areas in which it is not clear whether the legislature or the judiciary should establish the necessary rules.

Thus, while it is clear that courts possess rule-making power, the scope of the power cannot be defined until we determine the purpose of the questioned rule. If the purpose of the rule is to permit a court to function efficiently, the rule-making power is supreme unless its impact conflicts with a fixed public policy which has been legislatively or constitutionally adopted and has at its basis something other than court administration. When the purpose of the rule is to provide for the establishment or maintenance of the efficient administration of judicial business, and it does only that, the scope of the power vested in the courts is complete and supreme. However, until an area of practice or procedure is preempted by rules of court, we will give full effect to legislation. This will allow a healthy and orderly development of procedural reform.

The statute at issue involves procedure and evidence, but it deals with a subject which we have not preempted, videotape depositions of young victims of sexual crimes. Accordingly, the statute is not an unconstitutional violation of the separation of powers doctrine.

For his next assignment of error, the appellant contends that the trial court erred in refusing to permit him to voir dire the young victim prior to her testifying on direct examination. There is no merit to the argument under the facts of this case. Here, the qualification as to competency and the testimony was videotaped out of the presence of the jury. It was to be shown to the jury when the case was tried. At the videotaping session, after the trial court ruled that the victim was competent to testify, the appellant asked

to voir dire the witness. The trial court denied the request but stated that appellant could ask the same questions going to competency on cross-examination. During cross-examination appellant conducted voir dire by asking questions going to the witness's qualification to testify. After appellant's cross-examination, the court again ruled that the witness was competent. Appellant did not object to the jury viewing the voir dire portions of the videotape. Under these facts, there is no error. The jury did not hear the taped testimony until appellant had completed his cross-examination and the trial court had ruled the witness competent.

Appellant next argues that the victim should not have been allowed to testify because she was incompetent as a matter of law. This argument is also without merit. As we explained in *Logan* v. *State*, 299 Ark. 266, 773 S.W.2d 413 (1989):

> A trial court must begin with the presumption that every person is competent to be a witness. A.R.E. Rule 601. The burden of persuasion is upon the party alleging that the potential witness is incompetent. To meet that burden the challenging party must establish the lack of at least one of the following: (1) the ability to understand the obligation of an oath and to comprehend the obligation imposed by it; or (2) an understanding of the consequences of false swearing; or (3) the ability to receive accurate impressions and to retain them, to the extent that the capacity exists to transmit to the factfinder a reasonable statement of what was seen, felt or heard. . . . The competency of a witness is a matter lying within the sound discretion of the trial court and, in the absence of clear abuse, we will not reverse on appeal.

Appellant's argument focuses primarily upon the first two factors listed above. While it is true that the victim stated that she did not know what a lie was, nor what happens to a person when they tell a lie, her overall testimony showed her ability to understand the obligation of an oath and the consequences of false swearing. We cannot say that the judge abused his discretion in refusing to declare the witness incompetent.

Appellant asks us to review de novo the videotape to determine competency of the witness. We decline to do so. We can

see no good reason to employ a de novo review when the testimony is by videotape and to use an abuse-of-discretion standard of review when the witness testifies in person. Appellant's request loses sight of the purpose and goals of appellate review.

Finally, the appellant contends that there was insufficient evidence to sustain his conviction. The argument is without merit. The victim told her maternal grandmother that appellant had intercourse with her. She told the same basic story to others, although there were inconsistencies in her statements. The appellant resided in the same house as the victim. The victim testified that appellant committed the crime. There is no requirement of corroboration. The inconsistencies were for the jury to resolve, *Ellis* v. *State*, 279 Ark. 430, 652 S.W.2d 35 (1983), and the victim's testimony in this case provided a rational basis for the jury to find proof of guilt beyond a reasonable doubt.

Affirmed.

HOLT, C.J., NEWBERN and TURNER, JJ., dissent.

HICKMAN and HAYS, JJ., concur.

DARRELL HICKMAN, Justice, concurring. I agree with the result but write about this court's inherent rule making power. It's a power we have abused, and I am not confident we can use it with proper restraint. At least, it needs a thorough airing.

I have no disagreement with the theoretical principle that courts have an inherent power, if they choose to use it, to adopt purely practice and procedural rules. But when courts speak of their inherent power, it is like monarchs invoking divine rights: the people had better check their pockets and their persons because they are about to lose something they thought was theirs.

The most notable and flagrant instance of our misuse of this power is found in the Rules of Criminal Procedure. Virtually all of the rules relating to arrest and search and seizure are merely restatements of principles of law announced by the United States Supreme Court, or codification of Arkansas Statutes. Take for example Rule 14.2, Search of Open Lands, which reads:

> An officer may, without a search warrant, search open lands and seize things which he reasonably believes subject to seizure.

*See also* Rule 12.4, Search of Vehicles: Permissible Circumstances, which reads:

> (a) If, at the time of the arrest, the accused is in a vehicle or in the immediate vicinity of a vehicle of which he is in apparent control, and if the circumstances of the arrest justify a reasonable belief on the part of the arresting officer that the vehicle contains things which are connected with the offense for which the arrest is made, the arresting officer may search the vehicle for such things and seize any things subject to seizure and discovered in the course of the search.

> (b) The search of a vehicle pursuant to this rule shall only be made contemporaneously with the arrest or as soon thereafter as is reasonably practicable.

These are not rules of procedure, they are statements of substantive law gleaned from Supreme Court decisions interpreting the United States Constitution. By what authority do we legislate principles of law? Absolutely none. We not only cannot do so, the legislature cannot delegate its powers to us to do so. The general principle of law is not equivocal. 16 Am. Jur. 2d *Constitutional Law* § 335 reads:

> Since under the doctrine of the separation of the powers of government the lawmaking function is assigned exclusively to the legislature, it is a cardinal principle of representative government (and one not uncommonly stated, in terms, in state constitutional provisions), that except when authorized by the constitution—as may be the case in reference to municipal corporations—the legislature cannot delegate the power to make laws to any other authority or body, regardless of any exigency or emergency which may arise. The legislature may not in any degree abdicate its power; it may not make the effectiveness of a specific act dependent upon the will of another, and certainly it may not delegate to another the power to enact a law, whether in form or effect. Any attempt to abdicate legislative power in any particular field, although valid in form, is unconstitutional and void.

Section 337 reads:

The powers which the legislature is prohibited from delegating are those which are strictly, or inherently and exclusively, legislative. Thus, the rule is that in order that a court may be justified in holding a statute unconstitutional as a delegation of legislative power, it must appear that the power involved is purely legislative in nature—that is, one appertaining exclusively to the legislative department. It is the nature of the power, and not the liability of its use or the manner of its exercise, which determines the validity of its delegation. Purely legislative power, which can never be delegated, has been described as the authority to make a complete law—complete as to the time when it shall take effect and as to whom it shall be applicable—and to determine the expediency of its enactment. Thus, the legislature may not delegate its power to enact, suspend, or repeal laws. Nor may it delegate such essential elements of its lawmaking power as its power to declare principles and standards, or general public policy.

This doctrine of separation of powers is contained in Ark. Const., art. 4, §§ 1 and 2.

We have, in some cases, shed doubt on our ability to distinguish between laws of substance and procedure. In a recent decision involving the elementary principle of whether an act of the legislature could be applied retroactively, the majority could not differentiate between a statute that was substantive or procedural. *Spires* v. *Russell*, 300 Ark. 530, 780 S.W.2d 547 (1989) (Hickman, J., dissenting.)

So I question the opinion in this case which contains dictum that could lead to an extension of this court's rule making power. We do not need to extend that power: we need to limit it and use it with careful restraint. That we have not done.

OTIS H. TURNER, Justice, dissenting. Society regards nothing as more repugnant than the sexual abuse of a minor. Because of the emotions such misconduct evokes, we must take care to assure, when it is alleged, that all of the accused's rights are protected. This is especially imperative since Ark. Code Ann. § 16-44-203 permits, at the prosecutor's request, the testimony of the minor to be taken by video tape and introduced at trial. Further, the testimony of the victim does not require corrobora-

tion. *Sales* v. *State*, 291 Ark. 338, 724 S.W.2d 469 (1987).

In this instance, the trial court conducted voir dire of the seven-year-old minor and refused to permit counsel for the accused to conduct further voir dire until he interrogated the child on cross-examination. Since the minor was being permitted to testify by video, away from the tensions of the courtroom—the very reason why the testimony is permitted by video tape in the first place—and her testimony would have been sufficient for conviction without further corroboration, my sense of fairness compels me to conclude that counsel for the accused should have been permitted to test the competency of the minor without having to do so on cross-examination.

Any person who has ever tried a case to a jury knows the inherent difficulty of cross-examining a child. Competency to testify is a preliminary matter to be decided by the trial court, and the court's decision is subject to review here. I would reverse this cause to permit the defense counsel to conduct a reasonable voir dire to test the competency of the witness as a preliminary matter, without having to run the appreciable risk of alienating the jurors by conducting a meaningful voir dire as a part of cross-examination.

My concerns are magnified by the circumstances of the present case, where the minor's testimony was replete with inconsistency.

I respectfully dissent.

HOLT, C.J., and NEWBERN, J., join this dissent.