STATE of Arkansas *v.* Robert Dean SYPULT

CR 90-127                                    800 S.W.2d 402

Supreme Court of Arkansas
Opinion delivered December 3, 1990

*Steve Clark*, Att'y Gen., by: *Sandra Bailey Moll*, Asst.

6

Att'y Gen., for appellant.

*Ray Bunch*, for appellee.

JACK HOLT, JR., Chief Justice. The appellee, Robert Dean Sypult, was charged with first degree sexual assault on an eight-year old girl. During the discovery process, the state notified Sypult of its intent to use statements he made to doctors and a counselor at the Veterans Administration Hospital in Fayetteville. Sypult moved to suppress the statements on the basis that such communications are protected by the physician and psycho-therapist-patient privilege.

The trial court held a hearing on the motion and ruled that the state could admit evidence only that Sypult sought treatment, the type of treatment sought, and that the VA Hospital made a report in accordance with Arkansas law concerning the reporting of suspected child abuse to the proper authorities. The trial court further ruled, however, that any confidential statements between Sypult and his doctors and counselor were inadmissible.

The state appeals this interlocutory order, contending that the "confidential" statements are admissible pursuant to Ark. Code Ann. § 12-12-511(a) (1987 and Supp. 1989). We disagree and affirm the trial court's decision.

Section 12-12-511(a) states:

> *Any provision of the Arkansas Uniform Rules of Evidence notwithstanding,* and except as provided in subsection (b) of this section, any privilege between husband and wife or between any professional person, except the privilege between a lawyer and client, and the privilege between a minister, including a Christian Science Practitioner, and any person confessing to or being counseled by the minister, including, but not limited to, physicians, counselors, hospitals, clinics, day-care centers, and schools and their clients *shall not constitute grounds for excluding evidence at any proceeding regarding child abuse, sexual abuse, or neglect of a child or the cause thereof.* (Emphasis added.)

In its memorandum opinion, the trial court noted sound reasons behind the enactment of section 12-12-511, yet recognized that a literal application of the statute would, on the other hand,

completely erode the well-established policies embodied in the physician and psychotherapist-patient privilege. To avoid this conflict, the trial court designed its ruling to enforce provisions of our child abuse and sexual abuse statutes while preserving the sanctity of private communications between patients and their doctors and therapists under the Arkansas Uniform Rules of Evidence. *Ricarte* v. *State*, 290 Ark. 100, 717 S.W.2d 488 (1986), was cited for the proposition that this court "is the authority which controls the Rules of Evidence that apply in circuit court"; thus, the legislator's enactment of an exception to our rules of evidence was invalid.

In *Curtis* v. *State*, 301 Ark. 208, 783 S.W.2d 47 (1990), and *St. Clair* v. *State*, 301 Ark. 223, 783 S.W.2d 835 (1990) we reaffirmed our inherent rule-making power as identified in *Ricarte, supra*; however, we went on to say that we share this power with the General Assembly and that we will defer to its authority where legislation involving matters of public policy conflicts with court rules. *See also Lyons* v. *Forrest City Mach. Works, Inc.*, 301 Ark. 559, 785 S.W.2d 220 (1990).

Section 12-12-511(a) is clearly grounded in strong public policy — the protection of child abuse victims. So, once again, we are faced with sharing our rule-making powers with the legislature — this time involving the physician and psychotherapist-patient privilege. In doing so, we retreat from the positions we have taken in *Curtis* and *St. Clair, supra*, and redefine the parameters of our "shared" rule-making power with the legislature.

■ It is obvious that, in the interests of promoting important public policies and interests of the state, legislation enacted in this spirit will, on occasion, bring about conflict with rules of the court. It is equally obvious, however, that literal application of our decisions in *Curtis* and *St. Clair* to cases such as the one before us, could well open the door to total abrogation of the rules of evidence and procedure we deem vital to the interest and policies inherent in the judicial process. To protect what we hold inviolate we now declare that we will defer to the General Assembly, when conflicts arise, only to the extent that the conflicting court rule's primary purpose and effectiveness are not compromised; otherwise, our rules remain supreme.

The policy behind the physician and psychotherapist-patient privilege is to encourage patients to communicate openly with their physicians and therapists and to prevent disclosure of the patient's infirmities. *Arkansas State Medical Bd.* v. *Leonard*, 267 Ark. 61, 590 S.W.2d 849 (1979). Giving complete deference to the legislature would, in this instance, completely abolish the purpose and policy behind the rule. We cannot permit this.

The trial court's finding in the present case reflects our new position. The admission into evidence of the fact that Sypult sought counseling for sexual abuse and that a report was made to the proper authorities satisfies the General Assembly's purpose of enacting section 12-12-511 without taking from Sypult a privilege that has been firmly entrenched in Arkansas law since 1889. *See Casenote*, 36 Ark. L. Rev. 658 (1983).

We find strong support for our position in *State* v. *Andring*, 342 N.W.2d 188 (1984). There, the Minnesota legislature passed a child abuse reporting act very similar to ours, which provides that no evidence pertaining to a child's injuries is to be excluded in any proceeding arising from the abuse. In addressing the conflict presented by the existence of the physician-patient privilege, the court refused to allow elimination of the privilege and held that evidentiary use of only the information contained in the abuse report would best promote the legislature's policy behind the reporting act.

> The central purpose of the child abuse reporting statutes is the protection of children, not the punishment of those who mistreat them.

> This policy, which recognizes that the child may return to the same home environment in which the maltreatment occurred, is best effectuated by continued encouragement for child abusers to seek rehabilitative treatment.

> \*   \*   \*   \*

> A narrow construction of section 626.556, subd. 8, which would achieve the purpose of the reporting act without destroying the benefits that result when those who maltreat children seek confidential therapy programs, should be, and hereby is, adopted.

In sum, we hold that deference to legislation involving rules of evidence and procedure will be given only to the extent the legislation is compatible with our established rules. When conflicts arise which compromise these rules, our rules remain supreme. Under this pronouncement, Sypult's confidential statements to his doctors and therapist remain privileged; however, there is no privilege with regard to the fact that Sypult sought and received treatment. *See Baker* v. *State*, 276 Ark. 193, 637 S.W.2d 522 (1982).

The trial court further held that the admission of Sypult's statements would violate his fifth amendment right against self-incrimination and his sixth amendment right to counsel. It is not necessary, however, that we address these issues inasmuch as we uphold the trial court and its findings on the basis of the foregoing analysis.

Affirmed.

DUDLEY, NEWBERN, TURNER and PRICE, JJ., concur.

HAYS and GLAZE, JJ., dissent.

DAVID NEWBERN, Justice, concurring. The concurring opinion of Justice Turner expresses my views. I wish only to add that I cannot read our opinion in *Ricarte* v. *State*, 290 Ark. 100, 717 S.W.2d 488 (1986), as holding anything other than that the rules of evidence are rules of practice and procedure and not substantive law.

We were concerned with whether Ricarte could assert a privilege contained in one of the rules of evidence adopted, illegally as it turned out, by the general assembly. He asserted his wife could not testify against him because of the so-called "husband-wife privilege." The state responded that under Uniform Rules of Evidence 504(b), she could testify because the rule specified that only "confidential" communications were privileged. Ricarte objected to the state's reliance on the rule because its adoption by the general assembly had occurred in an unconstitutional manner. The trial court overruled the objection and allowed the wife to testify. We reversed.

We agreed with Ricarte that the rules had not been properly adopted by the general assembly. We explained our reasons for

exercising our authority to make rules, noting the chaos which might ensue if we were simply to hold the statutory version invalid without replacing it. Although we gave that explanation, we said nothing about the adoption being a stop-gap or temporary. Here is what we said about our authority:

> For more than fifty years there has been a steady trend in favor of committing to the courts the regulations of practice and procedure. Dean Wigmore took a strong stand in the matter as early as 1928. Editorial, 23 Ill. L. Rev. 276. Many others agreed. In 1940 the American Bar Association chose as the subject for its annual Ross essay contest: "To What Extent May Courts under the Rule-Making Power Prescribe Rules of Evidence?" the winning essay by Prof. Thomas F. Green, Jr., argued persuasively that all rules of evidence are properly subject to the courts' rule-making power. 26 A.B.A.J. 482 (1940). Other pertinent articles include another Ross essay submitted by Charles A. Riedly, 26 A.B.A.J. 601 (1940); Morgan, "Rules of Evidence—Substantive or Procedural?," 10 Vanderbilt L. Rev. 467 (1957); and Joiner and Miller, "Rules of Practice and Procedure: A Study of Judicial Rule Making," 55 Mich. L. Rev. 623 (1957).

> Arkansas has kept step with the progress made elsewhere. Our Constitution of 1874 confers upon the Supreme Court "a general superintending control over all inferior courts of law and equity." Art. 7 § 4. We note in passing that the Supreme Court of New Mexico relied on almost identical language in the New Mexico constitution as authority for the court's action in adopting the Uniform Rule of Evidence as the law in that state. *Ammerman* v. *Hubbard Broadcasting, Inc.*, 89 N.M. 307, 551 P.2d 1354 (1976), where the court analyzed in depth its rule-making power.

> In 1971, the Arkansas legislature used mandatory words in committing the regulation of criminal practice and procedure to this court:

> > The Supreme Court of the state of Arkansas shall have the power to prescribe, from time to time, rules of pleading, prac-

tice, and procedure with respect to any or all proceedings in criminal cases.

Ark. Stat. Ann. § 22-242 (Supp. 1985) [Ark. Code Ann. § 16-11-301(a)(1987)]. That action was not an improper delegation of legislative power; it merely recognized the court's inherent power. *Miller* v. *State*, 262 Ark. 223, 555 S.W.2d 563 (1977). The statutory language quoted above was repeated in a 1973 statute by which the legislature recognized the Supreme Court's power to prescribe rules with respect to procedure in civil cases. § 22-245 [Ark. Code Ann. § 16-11-302 (1987)]. Under those statutes we have adopted the Rules of Criminal Procedure and the Rules of Civil Procedure. More recently we adopted rules for the certification of court reporters. We are not the first court to adopt the Uniform Rules of Evidence by judicial action. That step has been taken not only in New Mexico, as mentioned earlier, but also in Florida, *In re Florida Evidence Code*, 372 So.2d 1369 (1979); in Montana, Montana Rules of Evidence, Ch. 10 Mont. Code Ann. (1984); and in Wisconsin, *In re Promulgation of Rules of Evidence*, 59 Wis. 2d R1-R377 (1973). The Supreme Court of the United States adopted the Federal Rules of Evidence pursuant to federal statutes quite similar to the 1971 and 1973 statutes enacted in Arkansas. See Reporter's Note, 409 U.S. 1132 (1972).

In our discussion concluding that the state would not get the benefit of our adoption of the rules in Ricarte's case, we suggested that, had the rules been in place and applicable to Ricarte's case, the state would have prevailed on the question of the limitation on husband-wife privilege contained in Rule 504(b). We made no reference to the privilege being a matter of public policy to be decided only by the general assembly. The psychotherapist-patient privilege is no different.

The substance-procedure distinction is a difficult one, but with respect to the nature of the rules of evidence, we crossed that bridge in the *Ricarte* case. But for our conclusion that the rules were procedural, we would have had no authority to adopt them, even temporarily. It is inescapable that the case held those rules come within our power to prescribe rules of "pleading, practice,

and procedure."

In our per curiam order adopting the rules as they had been published in Act 1143 of 1975, *In re Adoption of the Uniform Rules of Evidence*, 290 Ark. 616, 717 S.W.2d 491 (1986), we changed Rule 1102 so that the rules would no longer be named "Uniform Rules of Evidence" but would be named "Arkansas Rules of Evidence," thus making the title consistent with the "Arkansas Rules of Civil Procedure" and "Arkansas Rules of Criminal Procedure" which this court had adopted earlier. It is clear to me that we have preempted evidence law, and we will be governed by statutes in the area only when we have not adopted a conflicting rule.

The supreme court obviously does not have the exclusive authority to prescribe procedure. As we pointed out in *Curtis* v. *State*, 301 Ark. 208, 783 S.W.2d 47 (1990), and *St. Clair* v. *State*, 301 Ark. 223, 783 S.W.2d 835 (1990), we share that authority with the general assembly. Absent a rule of court a statue regulating procedure controls. In addition, the general assembly controls procedure in special statutory actions. Arkansas R. Civ. P. 81(a) excepts from the application of court rules "those instances where a statute which creates a right, remedy or proceeding specifically provides a different procedure in which event the procedure so specified shall apply." *Bohnsack* v. *Beck*, 294 Ark. 19, 732 S.W.2d 147 (1987); *Travelodge International, Inc.* v. *Handleman National Book Co.*, 288 Ark. 368, 705 S.W.2d 440 (1986). *See also Screeton* v. *Crumpler*, 273 Ark. 167, 617 S.W.2d 847 (1981).

We should have based our decisions in the *Curtis* and *St. Clair* cases on the substance-procedure distinction rather than one requiring us to determine whether public policy is involved in a rule or statute. Thus I particularly agree with the majority opinion's retreat from that aspect of those decisions. I presume, however, that the essence of those decisions, which is that statutory law will govern procedure except in an area preempted by court rule, remains.

I am also in full accord with Justice Turner's expression of the need for uniformity and clarity so that lawyers and litigants will not have difficulty added to the already complex task of knowing whether our rule or a statute applies. While we will still,

from time to time, have to decide whether a matter is substantive or procedural or whether an area has been preempted by court rule and thus is not governed by statute, it will be helpful for all to understand, as a result of this decision, that the Arkansas Rules of Evidence are the primary, general source of evidence law.

OTIS H. TURNER, Justice, concurring. I concur in the result reached by the court although for additional reasons, which may be inferred from the majority opinion, but which I choose to enunciate and emphasize.

The rules of practice and procedure, including the Rules of Evidence, constitute the foundation supporting our system based upon the rule of law. In order for the system to work in an efficient manner, it is imperative that the rules under which litigants and their attorneys operate be, as nearly as possible, definite, certain, and uniform in their application. Not only are these objectives necessary to achieve uniform justices, but they are also essential to promote uniformity in practice. No other means are available for those involved in the justice system on a day-to-day basis — the lawyers and trial judges — to know with any degree of certainty the extent of their obligations and limitations in their efforts to achieve the efficient and consistent administration of justice. It is clear that those matters that are procedural in nature inherently rest with the judiciary.

As this juncture, I feel compelled to elaborate on the basis for my concurrence. In our cases cited by the majority, we have alluded to "matters of public policy." Clearly, matters of public policy enacted as laws by the legislature involving *substantive rights* as distinguished from matters of *procedure* will always be controlling, subject to constitutional restraints. However, it is not sufficient to say simply that we will defer to legislative enactment on all "matters of public policy"; in fact, all enactments of the General Assembly become matters of "public policy."

Therefore, even though a particular legislative enactment, procedural in nature, may serve to enhance or advance an acknowledged public policy issue, if the legislatively enacted procedure conflicts with a procedure established by the judicial branch, then in *all* such cases the judicially established procedure should prevail unless and until it is changed or modified by the judicial branch.

This position in no way conflicts with our decisions which hold that in matters of procedure clearly involving public policy issues, where the judicial branch has *not* previously spoken and preempted the subject, a legislative enactment not in conflict with established rules of practice and procedure will be recognized and enforced. *See Curtis* v. *State,* 301 Ark. 208, 783 S.W.2d 47 (1990).

To adhere to this policy will aid in promoting the stability of our system of jurisprudence. It will secure the establishment of a body of procedural law which, it is to be hoped, will be uniform in its application and consequently less subject to exceptions which, although created with all good intentions, in their proliferation may overturn an entire area of established practice and procedure. For this court to hold otherwise, litigants and their attorneys would have no objective means for determining which procedures meet the "public policy" criteria. A final resolution would thus only follow an oftentimes expensive trial and appeal.

PRICE, J., joins.

TOM GLAZE, Justice, dissenting. I disagree with the majority court for two reasons.

First, the result reached by the majority assumes there is a conflict between Ark. Code Ann. § 12-12-511(a) (1987 and Supp. 1989) — the General Assembly's provision that disallows any privilege in a child sex abuse case for a person who confesses to or is counseled by a physician — and A.R.E. Rule 503 — this court's general rule, providing for a psycho-therapist-patient privilege. The history behind § 12-12-511(a) and Rule 503 reveals no such conflict.

The General Assembly enacted § 12-12-511(a) in 1975 and in an extended session adopted Rule 503, which was contained in the Uniform Rules of Evidence. *See* Act 1143 of 1975 (Extended Session 1976); Ark. Stat. Ann. § 28-1001 (Repl. 1979). Of course, in *Ricarte* v. *State,* 290 Ark. 100, 717 S.W.2d 488 (1986), this court held the Uniform Rules of Evidence were not validly adopted because the General Assembly was in an unlawfully extended session at the time. To avoid a host of problems that could result from having no lawfully enacted rules of evidence, this court, citing its inherent power to do so, merely adopted Rule

503 and the other Uniform Rules of Evidence as court rules. Nevertheless, the point is quite clear that it was the General Assembly that originally enacted both § 12-12-511(a) and Rule 503.

Recently, we considered § 12-12-511(a) and whether it was controlling in a situation where the social worker privilege law, Ark. Code Ann. § 17-39-107 (1987), had been invoked by a defendant charged with a sex abuse crime. *Cozad* v. *State*, 303 Ark. 137, 792 S.W.2d 606 (1990). We held § 12-12-511(a) controlled, and the trial court correctly allowed the social worker to testify. In doing so, we referred to the settled rule that a general statute (§ 17-39-107) did not apply when there was a specific statute (§ 12-12-511(a)) covering a particular subject matter.

The instant case bears the same scrutiny and analysis. Here, Rule 503 provides a general privilege when the psychotherapist-patient relationship exists, but § 12-12-511(a) prohibits any such privilege in child sex abuse cases. The only distinction between the situation in *Cozad* and the one here is that this court in *Ricarte* adopted the General Assembly's Rule 503 and other evidentiary rules as rules of the court. In adopting those rules, this court was not ignorant of § 12-12-511, and other statutory provisions like it. Significantly, the court never indicated that it would place a different construction on these rules of evidence than that which had been previously intended by the General Assembly. Contrary to the majority court's suggestion, this is not a situation where this court and the General Assembly have adopted a rule and a statute, concerning a procedural or evidentiary matter, that serve cross purposes. Instead, Rule 503 and § 12-12-511(a) originated from the same source — the General Assembly — and as a consequence, should be harmonized as was done in *Cozad*.

My second and most serious point of departure concerns the majority's expansive view of this court's holding in *Ricarte*. With its decision today, the majority concludes that the court's inherent authority preempts any evidentiary law enacted by the General Assembly that conflicts with this court's rules even if that law is substantive, and not procedural, in nature. In this respect, the majority extends its role and power too far.

Common law failed to recognize physician-patient and

related privileges. S. Stone and R. Liebman, *Testimonial Privileges* § 7.02 (1983); *Allred* v. *State*, 554 P.2d 411 (Alaska 1976). The reluctance of the common law to protect physician-patient communications may well have stemmed from a view that such protection was not sufficiently necessary or important. R. Stone and R. Liebman, *Testimonial Privileges* § 7.02 (1983). However, even in states where such a privilege is recognized, that privilege in numerous states has been determined inapplicable in criminal cases, *id.* at § 7.24, because of the state's countervailing interest in uncovering and proving crime.

In a paper prepared for the Michigan Procedural Revision Committee, Charles W. Joiner and Oscar J. Miller emphasized the distinction between rules of evidence that they characterized as involving only procedure or "the orderly dispatch of judicial business" from those they say involve policy decisions that should be enacted by the legislature. *See* Joiner & Miller, *Rules of Practice and Procedure: A Study of Judicial Rule Making*, 55 Mich. L. Rev. 623, 651 (1957). We adopted such a distinction in our recent cases. *St. Clair* v. *State*, 301 Ark. 223, 783 S.W.2d 835 (1990); *Curtis* v. *State*, 301 Ark. 208, 783 S.W.2d 47 (1990). Today, the majority decision abandons this distinction, and I believe mistakenly so.

Most states either by legislation, constitution or court decision have recognized that a court cannot by its rule-making authority, abrogate or modify substantive law. *See* D. Pugh, C. Korbakes, J. Alfine and C. Grau, *Judicial Rulemaking, A Compendium* (1984) (*See* in particular states Alaska, Delaware, Florida, Idaho, Illinois, Iowa, Kansas, Minnesota, Nebraska, Nevada, New Jersey, Ohio, Oregon, South Dakota, Tennessee, Texas, Utah, Virginia, Wisconsin, Wyoming.)[1] From my research, the supreme courts of Arizona, North Dakota and New Mexico are the only jurisdictions that have extended their rule-making power to promulgate all rules of evidence, whether they affect procedural or substantive rights, as does the majority court

---

[1] The distinction between substance and procedure was discussed in *Sibbach* v. *Wilson & Co.*, 312 U.S. 1 (1941), where the Court stated the test must be whether a rule really regulates procedure — the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them. *Id.* at 14.

in today's decision. *State v. Seidel*, 142 Ariz. 587, 691 P.2d 678 (1984); *Ammerman v. Hubbard Broadcasting, Inc.*, 89 N.M. 307, 551 P.2d 1354 (1976); *State v. Vetsch*, 368 N.W.2d 547 (N.D. 1985).

In sum, I have no problem with this court's decisions where it has exercised its inherent power to control an area of procedure or practice, especially when it has preempted that area of procedural law. *See Lyons v. Forrest City Mach. Works, Inc.*, 301 Ark. 559, 785 S.W.2d 220 (1990); *May v. Hankins Distributing Co.*, 301 Ark. 494, 785 S.W.2d 23 (1990). However, when extending its inherent power to include evidentiary matters that contain both procedural and substantive rights. I believe the court goes too far. *In fact, the majority court's opinion makes no mention of or distinction between procedural and substantive rights. Of course, if the majority had done so, it would have required reversal of the trial court's ruling since the psychotherapist-patient privilege is a rule that clearly vests in a person a substantive right that never existed at common law or until the legislature provided for it by statutory law.*

While it may be argued that this court's expertise in both procedural and evidentiary matters should be superior to the legislature's, this court simply has not exercised its authority in drafting and promulgating evidentiary rules — independent of the General Assembly — except to avoid the problems discussed in *Ricarte*.[2] This court has far more than it can do now in trying to keep up with its case load and other committee work.[3] Now, the court will independently be required to add another committee to study and to keep abreast of what changes need to be made regarding the uniform rules of evidence. Until now, that task has

---

[2] It is interesting to note that the Congress has plenary authority over the promulgation of evidentiary rules for the federal courts. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976). This authority has been delegated to federal courts by 28 U.S.C. § 2071 (1948) and 28 U.S.C. § 2076 (1975), but the statutes make it clear that any rule promulgated by the courts must be consistent with the Acts of Congress.

[3] For example, some of this court's committees presently include the following: Supreme Court Committee on Rules Criminal, Supreme Court Committee on Rules Civil, Model Jury Instructions Criminal, Model Jury Instructions Civil, Board of Certified Court Reporter Examiners, Unauthorized Practice of Law Committee, State Board of Law Examiners, Supreme Court Committee on Professional Conduct.

18

been a cooperative venture with the General Assembly. I believe not only the law but also practicalities warrant that cooperative venture to continue — at least in areas where evidentiary rules affect substantive rights, as they do in the instant case.

For the reasons above, I would uphold the validity of § 12-12-511(a) and reverse this case.

HAYS, J., joins this dissent.