The Honorable Wayne Matthews Prosecuting Attorney Eleventh Judicial District Jefferson County Courthouse P.O. Box 8051 Pine Bluff, Arkansas 71611
Dear Mr. Matthews:
This is in response to your request for an opinion concerning the use of referees in involuntary commitment procedures. Your questions require an analysis of Article 7, 34 of the Arkansas Constitution, and relevant case law. I should begin by saying that only a court can decide this issue conclusively. The following analysis should be of help to you, however. I will restate your questions as I address them. For purposes of clarity, the order of your second and third questions has been reversed.
 1) May a probate judge appoint a referee to conduct immediate detention hearings in involuntary commitment procedures?
I am assuming that your first question refers to the initial hearings in "immediate confinements" as addressed by A.C.A.20-47-210, and not the "general" involuntary commitment procedures.[1]
There are two provisions for immediate confinement under A.C.A. 20-47-210. Subsection (a)(1) provides that an interested citizen or law enforcement officer may take an individual to a hospital or receiving facility when said individual presents a clear and present danger to himself or others due to a mental illness, disease, or disorder and immediate confinement appears necessary. The section further provides that a petition must be filed within three days and an "initial hearing" must be conducted. Section 20-47-209
provides the guidelines for the initial hearing, and states that "the petitioner shall appear before the referee or probate judge hearing such petition to substantiate the petition." If this is the hearing that you are referring to, it is my opinion, that the Arkansas Code authorizes a probate judge to appoint a referee to conduct this initial hearing for immediate confinement.
The second provision for immediate confinement requires filing a petition with a request for immediate confinement attached. This situation is addressed in A.C.A. 20-47-210(b), which provides in relevant part that:
 (1) When a petition for involuntary admission with a request or immediate confinement appended thereto is filed, the petitioner shall then appear before a probate judge of the county where the person sought to be immediately confined resides or is found.
 (2) The probate judge shall then conduct an ex parte hearing for the purpose of determining whether there is reasonable cause to believe that the person meets the criteria for involuntary admission and, further, that the person is in imminent danger of death or serious bodily harm, or that others are in danger of death or serious bodily harm due to the mental condition of the person sought to be involuntarily admitted.
 (3) If the probate judge determines that immediate confinement is necessary to prevent death or serious bodily harm to either the person sought to be involuntarily admitted or others, the judge shall order the law enforcement agency that exercises jurisdiction at the site where the individual is physically present to transport the individual to an appropriate receiving facility. A hearing, as provided for in 20-47-209(a)(1) shall be held within seventy-two (72) hours of the person's detention and confinement.
According to this statute, the "probate judge shall" conduct the ex parte hearing and, if cause is found, the "probate judge shall" issue an order to have the individual picked up. It should be noted that the sections discussed earlier refer to "the court" issuing an order and "the court" making a determination, rather than the probate judge. See A.C.A.20-47-205, 20-47-209 and 20-47-214 (Repl. 1991). Although20-47-205 states that a probate judge may appoint a referee to conduct involuntary commitment procedures, 20-47-210 is a specific statute governing "immediate confinements," and as such should be given more weight. A general law does not apply where there is another statute governing the particular subject. Williams v. Pulaski County Election Comm'n, 249 Ark. 309,459 S.W.2d 52 (1970).
It is therefore my opinion that while the Arkansas Code does not authorize a referee to conduct the ex parte hearing or issue an immediate pick up order in response to the petition in this situation (under 20-47-210(a)(2) and (b)), the referee is authorized to conduct the "initial hearing" held three days after confinement. Section 20-47-210(b)(3) states that three days after the person's detention, an initial hearing, as provided in 20-47-209(a)(1), will be held. As I stated earlier, 20-47-209 states that "the petitioner shall appear before the referee or probate judge hearing such petition to substantiate the petition." It is my opinion, therefore that the Arkansas Code authorizes a judge to appoint a referee to conduct the "initial hearing," in this situation also. This opinion, however, is based solely upon an interpretation of the Act in question since there are no cases offering guidance in this area.
 2) Does a probate judge issuing an immediate detention order have to hear any ensuing petition for involuntary commitment, or can he/she delegate this to a probate referee?
I assume that this question refers to the "initial hearing" and the later "45 day involuntary commitment hearing" that takes place after a probate judge has issued an immediate pick up order in response to a petition with a special request for immediate confinement attached. As I stated in my response to your first question, as long as the Probate Judge conducts the ex parte hearing with the special request for immediate confinement attached and then issues the pick up order, if appropriate, he can then appoint a referee to conduct the "initial hearing," held three days after confinement, and the "45 day involuntary commitment hearing," held seven days after the initial hearing. See also A.C.A.20-47-205(b)(1).
 3) May a probate judge appoint a referee to handle any facet of an involuntary commitment for (1) mental illness; (2) alcohol abuse; or (3) drug abuse?[2]
I am assuming from language used in your request, that your third question refers to the constitutionality of the use of referees with regard to any type of involuntary commitment. As mentioned in your request, the Arkansas Supreme Court held that Act 14, 6 of 1987 violated art. 7, 34 of the Arkansas Constitution, which proscribes the jurisdiction of the probate Courts. Hutton v. Savage, 298 Ark. 256 (1989). Act 14, 6 permitted the use of masters and referees in juvenile cases, and has brought into question the constitutionality of using referees in involuntary commitment procedures.
In Hutton, a juvenile master conducted a hearing involving the custody of two dependent-neglected children. An order was entered, signed by the master and the probate judge, finding that custody should remain with the Department of Human Services ("Department"), and that the Department could proceed with authority to consent to adoption. The court found that the order was not signed by the master and reviewed appropriately by the probate judge, but instead was a final order entered by the master and "merely co-signed by the probate judge." The court not only found that the master exceeded the powers that probate courts can grant to a juvenile master, but went on to strike down Act 14, 6 as an unauthorized grant of legislative authority.
In Hutton, the court stated the following about Act 14, 6: "intended or not, the net effect . . . was to create substitute judges contrary to the provision in Ark. Const. art. 7, 34, that the judge of the probate court shall try all issues of law and fact arising in causes or proceedings within the jurisdiction of that court." The problem that the court appeared to have with the Act was in the language of the following phrases: 1) "appoint a referee or master who shall have such power as may be granted by the judges of said division," and 2) "a referee or master so designated shall have all the authority and powers of the judges of their respective divisions." The court reversed and remanded the case with these instructions:
 In light of the foregoing, we reverse and remand to the probate court for such proceedings before the probate judge. . . . The probate judge may, of course, employ the services of the master to the extent permitted by Rule 53 and should, pursuant to subsection (e), accept the master's findings of fact unless clearly erroneous or, after a hearing, adopt, modify, or reject the master's report as provided in subsection (e)(2).
The effect that the Hutton case has on involuntary commitment procedures is not clear. The constitutional question can only be definitively resolved by a court. In my opinion, however, the authorization for the use of referees under 20-47-201 to -228 is distinguishable from the act in question in Hutton. According to 20-47-205, appeals from the order of the referee "may be taken as a matter of right to the probate court," where the probate judge conducts a trial de novo within seven days of the filing of the appeal. In addition, the language that offended the court in Hutton is not present. The powers of the referees are set out in 20-47-205 to -228, instead of being left to the probate judge's discretion, and the sections do not explicitly grant the referees "all the authority and power of the judges." While the statutes governing involuntary commitment procedures do not, in my opinion, explicitly violate Rule 53 of the Arkansas Rules of Civil Procedure, notice should be taken of 53(b) wherein it states that "reference to a master shall be the exception and not the rule."[1]
Thus, there is some basis for distinguishing between the act at issue in Hutton and the act at issue herein. Whether the practices occurring under these acts, however, are similar, and therefore unconstitutional as applied, is a question of fact which would have to be determined by a court presented with all the evidence.
Finally, with regard to a particular federal court order you mention issued on April 4, 1994, concerning the City of Pine Bluff, I must note that I have not been provided with a copy of this order, and thus cannot determine whether, in fact, it prohibits referees from hearing involuntary commitments in Pine Bluff. Reference to this particular court order, and possibly clarification from the federal court, would be necessary to resolve the issue conclusively in that jurisdiction.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely, WINSTON BRYANT Attorney General
WB:ddm/cyh
[1] With regard to "general" involuntary commitment procedures, the Arkansas Code clearly authorizes a probate judge to appoint a referee to: 1) issue an order directing a respondent to appear for an initial hearing within three days after a petition has been filed, 2) conduct the initial hearing and 3) conduct the forty-five day involuntary admission hearing within seven days of detention. See A.C.A.20-47-205, -209 and -214 (Repl. 1991).
[2] Involuntary commitments for alcohol and drug abuse are governed by A.C.A. 20-64-815, 20-64-816, and 20-64-821. Nothing in this subchapter refers to, or authorizes the use of referees in probate court. But see Ark. R. Civ. Pro. 53 (authorizing the use of referees with strict limitations).
[1] When conflicts arise between the Rules of Civil Procedure and legislation of the General Assembly, the court will defer to the General Assembly, as long as the court rule's primary purpose and effectiveness are not compromised. State v. Sypult, 304 Ark. 5, 800 S.W.2d 402 (1990). In my opinion, it could reasonably be argued that the use of referees in involuntary commitment procedures does not compromise the effectiveness of Rule 53.