Arthur L. GEORGE *v.* STATE of Arkansas

CR 91-100                                    813 S.W.2d 792

Supreme Court of Arkansas
Opinion delivered July 15, 1991
[Supplemental Opinion on Denial of Rehearing
November 11, 1991.*]

* Hays, Glaze, and Corbin, JJ., concur. Holt, C.J., Dudley and Newbern, JJ., would grant rehearing.

*Carolyn Lee Whitefield*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This appeal arises from the conviction of the appellant, Arthur L. George, for first degree sexual abuse where the jury assessed a sentence of ten years. The victim was a young girl who was 2 ½ years old at the time of the offense and 3 ½ years old at the time of the trial. When the events that are the subject of this appeal occurred, she was under the care of the appellant, who ran a private day care service with his wife in his home in the City of Texarkana. The appellant was age 68 at the time of the criminal charge. The primary issues on appeal relate to the confrontation rights of the appellant under the Sixth Amendment and the introduction into evidence of the appellant's prior conviction for a similar offense as part of the state's case-in-chief.

Paul and Ginger Oliver enrolled their daughter in day care with the appellant and his wife for approximately one year, from August or September 1988 to September 1989. The victim stayed with the Georges during work hours Monday through Friday. Because of the fact that there was only one other child at the Georges' in August 1989, the Olivers moved their daughter to a new day care facility in September named Tot's Landing where she could be with other children. The daughter, however, did return to the Georges' on occasion in September and October 1989 for visits, including a visit Halloween night on October 31. Mrs. Oliver testified that her daughter did not want to go to the Georges' on Halloween night but had wanted to go by for a visit two weeks earlier.

On the night of November 2, 1989, Mrs. Oliver was awakened by her daughter who was having a nightmare. She had had a series of nightmares recently, but on this occasion she complained of dinosaurs in her room which might bite her. The dinosaur fear apparently was inspired by a film that she had seen at Tot's Landing about dinosaurs entitled *The Land Before Time*. Mrs. Oliver tried to allay her daughter's fears, but the daughter

responded, according to Mrs. Oliver, "Yes, there's dinosaurs in there and they are going to bite me and they are going to bite me like Papaw George bites me." Mrs. Oliver pursued what her daughter meant, and her daughter said, according to Mrs. Oliver, "He bites me on my tee tee." She then pointed to her genital area.

Mrs. Oliver asked her daughter again about George and she replied, according to her mother, "Yes, he bites me like the dinosaurs are going to bite me." Mrs. Oliver went back to bed, but about fifteen minutes later her daughter awoke and again brought up George and the dinosaurs.

Mrs. Oliver relayed her conversation to her husband who was incredulous, but the next morning he asked his daughter about the appellant, and she repeated for him, according to his testimony, that she was afraid the dinosaurs were going to bite her "like Papaw George" did. The father asked where she had been bitten, and the daughter "bent over and pulled up her dress and leaned over and pointed at her behind," according to his testimony.

On November 3, 1989, Mrs. Oliver made an appointment with a social worker for the Arkansas Department of Human Services, Evonne Fellers, to interview her daughter. Ms. Fellers used an anatomically correct doll and had the victim identify parts of the body. The victim played with the vaginal area of the doll and, in response to the social worker's question about what the appellant had done, "stood up, pulled her pants down, bent over, raised her buttocks and pointed to her buttocks." At that point Mrs. Oliver, who was in the room interjected that her daughter usually said that "Papaw George bites her on the tee tee." During the interview the victim did not verbalize anything to the social worker.

The appellant was changed with first degree sexual abuse as a person over age eighteen who engaged in sexual contact with a person under age fourteen under Ark. Code Ann. § 5-14-108 (1987). Thereafter, the state filed a motion for a hearing to determine the trustworthiness of the victim's statements to her mother, father, and the social worker under Ark. R. Evid. 803(25), and that hearing was held on September 4, 1990. At the conclusion of the hearing, where the Olivers, the social worker and the victim testified, the court ruled that the victim's state-

ments to Mr. and Mrs. Oliver were trustworthy based on the evidence presented by the state taken as a whole. Also, since the victim had testified and been cross-examined, the trial court found that the appellant was not denied his right to confront a witness against him.

The jury trial commenced on September 10, 1990, and lasted until September 12, 1990. At the trial the victim testified and was cross-examined, but she was largely unresponsive to defense counsel, and her testimony was confused and at times contradictory. At the conclusion of her testimony, the trial court ruled that the victim was incompetent to testify and instructed the jury to disregard her testimony. The victim's hearsay testimony, as related by her parents, was deemed admissible. The trial court also permitted the state to introduce as part of its case the appellant's prior conviction for first degree sexual abuse dated July 26, 1990. The prior acts which constituted that offense occurred between September 1987 and September 1989, pre-sumably at the Georges' home, although this is not clear from the record.

### Confrontation Clause

For his first argument, the appellant contends that he was effectively denied his right to cross-examine the victim due to her confusing and contradictory responses and, at times, outright refusal to answer questions. This rendered the victim unavailable for cross-examination, according to the appellant. In addition, he argues that the victim's statements to her parents were unrelia-ble. When the right to confront witnesses under the Sixth Amendment is denied, so the argument goes, it is error for the trial court to admit hearsay statements into evidence under Ark. R. Evid. 803(25).

The U.S. Supreme Court has held that the Confronta-tion Clause in the Sixth Amendment assures the defendant the twin rights of a face-to-face confrontation with his accuser and the right to cross-examination. *See Coy* v. *Iowa*, 487 U.S. 1012 (1988). At the same time the right to confrontation is not absolute, and the Confrontation Clause "does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause." *Idaho* v.

*Wright*, ___ U.S. ___, 110 S. Ct. 3139, 3145 (1990).

In *Wright* the Court quoted from its prior holdings on the Confrontation Clause and concluded that the reliability of a hearsay statement could be met where the hearsay statement falls within a firmly rooted hearsay exception *or* where it is supported by particular guaranties of trustworthiness, which must be shown from the totality of the circumstances. *See also Lee v. Illinois*, 476 U.S. 530 (1986); *Ohio v. Roberts*, 448 U.S. 56 (1980). Factors to examine in determining trustworthiness, according to the Court in *Wright* and based on state and federal court decisions, are a) spontaneity and consistent repetition, b) mental state of the declarant, c) use of terminology unexpected of a child of similar age, and d) lack of motive to fabricate. The *Wright* Court rejected other corroborative evidence of guilt, such as medical evidence of abuse, as having no bearing on the actual trustworthiness of the declarant's statement.

The facts in *Wright* were similar to the facts before us. There, the declarant involved was 2 1/2 years old at the time of the crimes charged, and the trial court found her unable to communicate to the jury, and thus unavailable. The trial court in the present case found the victim incompetent to testify, after her testimony to the jury which was contradictory, inconsistent, and at times non-responsive. Nevertheless, as the Court in *Wright* pointed out, a finding of inability to communicate did not render the victim's prior statement *per se* unreliable or even presumptively unreliable. The Court was only willing to say that this might have some relevancy in determining trustworthiness.

The victim's statements of child abuse in *Wright* had been made to a pediatrician. In determining the reliability of the victim's statements, the trial court had looked not only at the circumstances of the statements, but also at corroborative evidence of the abuse itself such as medical evidence, the opportunity of the defendant to commit the offense, and the sister's testimony that the abuse had transpired. Due to the trial court's consideration of factors, unrelated to the circumstances of the victim's statements, the Court excluded these statements as not firmly rooted in a hearsay exception and not possessing sufficient guaranties of trustworthiness under the Confrontation Clause.

In reviewing the factors set out in *Idaho v. Wright* for

trustworthiness and applying them to the case before us, we look first at spontaneity and consistent repetition. The victim in the present case certainly satisfied the spontaneity criterion by blurting out her statement to her mother following a nightmare about dinosaurs. Moreover, she has consistently maintained that the appellant bit her in her genital area. This is confirmed by the statements she made to her mother and father, her demonstration of where she was bitten to her father and the social worker, and her statements and demonstrations at the pre-trial hearing and trial — though admittedly her testimony at times was contradictory. For example, she once told defense counsel that her statement about being bitten was "wrong." Such contradictions, however, can easily be attributed to the impact of courtroom trauma on a 3 ½ year old. The austerity of the judge, the presence of the appellant, the tension of her parents, and the subtle antagonism of defense counsel all contributed to a very unsettling environment for the child. By and large, however, she adhered to her story of being bitten in the genital area by the appellant.

Moreover, while she was excited at the time she told her mother the story, there is nothing to suggest that she was deranged or had any motive to fabricate the story against the appellant, which are other *Wright* factors. Her story to her parents was unique and plausible and would not have been within the experience of a girl of such tender years. Mrs. Oliver confirmed that her daughter was unfamiliar with any kind of sexual experience which is certainly understandable at her age. Her demonstrations of where she was bitten added additional credence to her statements.

We hold, therefore, that though the victim was in effect unavailable to testify at trial due to the judge's finding of lack of competency, sufficient guarantees of trustworthiness existed in this case under the *Wright* criteria to support the trial court's finding that the parents' testimony of the victim's statements did not violate the appellant's confrontation rights. We thus follow the *Wright* case in holding that the victim's inability to testify effectively at trial did not presumptively invalidate the reliability of her statements to her parents. We further hold that the victim's statements to her mother (but not her father), qualify as an excited utterance under Ark. R. Evid. 803(2), because they were made at an unusually late hour following a nightmare that

clearly terrified the victim.

## Rule 803(25)

The holding in *Idaho* v. *Wright* does call Rule of Evidence 803(25), which was passed by the General Assembly in 1985, into question. The Court in *Wright* held that corroborative evidence unrelated to the circumstances of the victim's statements was irrelevant to a determination of the reliability of those statements. Yet, Rule 803(25) specifically contemplates the trial court's use of such corroborative evidence in deciding trustworthiness. Ark. R. Evid. 803(25)(1). Moreover, Rule 803(25) does not include the specific factors deemed important for trustworthiness in *Wright* and used in the case before us: a) spontaneity and consistent repetition; b) mental state of the declarant; c) use of terminology unexpected of a child of similar age; and d) lack of motive to fabricate.

The reasoning behind the admission of hearsay statements of an unavailable victim is that the statements are so trustworthy, cross-examination of the victim would be of little help to the defense. Hence, the Confrontation Clause rights of the defendant are not violated. In the present case we have held that the trial court appropriately found that the victim's statements to her parents were trustworthy, and we used the *Wright* factors to arrive at our conclusion. Though the trial judge clearly considered Rule 803(25), we do not find from our examination of the record that he used irrelevant corroborative evidence in reaching his decision. Nor was this specific point argued by the appellant at trial or on appeal, although the appellant did raise the issue of the constitutionality of Rule 803(25) generally. To the extent that the trial court did consider corroborative evidence (and, again, the record does not reflect that he did), we hold that it was harmless error.

Nevertheless, in light of the *Wright* case we no longer believe that Rule 803(25) passes constitutional muster. Under its terms a trial judge could rely heavily on corroborative evidence of the crime in admitting an unavailable victim's hearsay statements as trustworthy and, in doing so, run afoul of the Confrontation Clause. As the U.S. Supreme Court stated in *Wright*, the factors to be considered must relate to the circumstances of the

hearsay declaration itself and not to mere proof of the crime. Impermissible factors are, therefore, included in Rule 803(25) and relevant factors, as specified in *Wright*, are not. Rule 803(25) is constitutionally defective on its face, and we so hold.

### Prior Conviction - Rule 404(b)

The appellant also contends that the introduction into evidence of his prior conviction for first degree sexual abuse was reversible error. The applicable rule reads in pertinent part:

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identify, or absence of mistake or accident.

Ark. R. Evid. 404(b).

In a 1981 case where the crime charged was first degree sexual abuse, the defendant had tried unsuccessfully by pretrial motion to prevent the state from impeaching his credibility under Ark. R. Evid. 609(a) with a nolo contendere plea he had made to a rape involving a young boy. *See Jones v. State*, 274 Ark. 379, 625 S.W.2d 471 (1981). The trial court denied the motion, and the defendant did not take the stand. We held that the ruling was wrong on the basis that the prior conviction "would have been of scant probative value as compared to its significantly prejudicial effect on the jury." 274 Ark. at 381; 625 S.W.2d at 472. We noted that the potential for prejudice was especially great in the sexual abuse context.

In 1987, however, we focused on Rule 404(b) and affirmed the admissibility of different deviate sexual acts perpetrated on the victim. *See Free v. State*, 293 Ark. 65, 732 S.W.2d 452 (1987). In so holding we said that "we will allow such testimony to show similar acts with the same child or other children in the same household when it is helpful in showing 'a proclivity toward a specific act with a person or class of persons with whom the accused has an intimate relationship.'" 293 Ark. at 71; 732 S.W.2d at 455; *quoting White v. State*, 290 Ark. 130, 717 S.W.2d

784 (1986). We further held in *Free* that such evidence of similar acts assists in proving the depraved sexual instinct of the accused.

While there is the potential for prejudice resulting from the admission of similar crimes of sexual abuse, Rule 404(b) clearly establishes that such evidence of "other crimes, wrongs or acts" may be admissible to prove, not the bad character of the defendant, but his motive, plan, or intent. Here, the trial court admitted a sexual abuse conviction into evidence which had occurred less than two months before the trial that is the subject of this appeal. Neither the state's exhibit of the conviction nor the testimony at trial provide more particulars relating to the earlier conviction. Yet the trial court found that the appellant's conviction for a similar act was some evidence of intent and was admissible on that basis under the Rule.

The trial court did not abuse its discretion in so ruling. The prior conviction for first degree sexual abuse occurred within two months of the trial in this case. The prior offense also occurred within the same time frame as the offense here. Under such circumstances the prior conviction is probative of intent, motive, or plan. This is so even though the prior sexual abuse involved another person. *See Baldridge v. State*, 32 Ark. App. 160, 798 S.W.2d 127 (1990). (Prior sexual advances to a niece were probative of similar advances toward a nephew.)

We are, further, unable to draw a legitimate or reasonable distinction between introduction of a *similar act* to prove intent and introduction of a *conviction* for a similar act to prove intent. Rule 404(b), in referring to "crimes," does not make that distinction, and we question whether the distinction is meaningful when the real issue is the probative value of proof of an element of the offense weighed against its prejudicial impact.

We have held that a prior conviction is inadmissible to prove general intent to commit a crime, because the prejudice far exceeds the probative value. *See Alford v. State*, 223 Ark. 330, 266 S.W.2d 804 (1954). We also have held that in special circumstances where specific intent is an element of the crime, evidence of that intent is admissible. *Id.* We concluded in *Alford* that "our cases very plainly support the common sense conclusion that proof of other offenses is competent when it actually sheds light on the defendant's intent; otherwise it must be excluded."

223 Ark. at 338; 266 S.W.2d at 808. In the case of child abuse such as we have here, a depraved sexual instinct was involved, and our prior cases have noted that similar unnatural sex acts may shed light on such an instinct. *See, e.g., Young* v. *State*, 296 Ark. 397, 757 S.W.2d 544 (1988).

We, therefore, affirm the admissibility of similar child abuse acts as probative of motive, plan or intent under Rule 404(b). The case of *Jones* v. *State*, as discussed above, is distinguishable on its facts. Nevertheless, to the extent *Jones* is inconsistent with our holding today, we overrule it.

Lastly, we note that the trial court gave a cautionary instruction relating to the prior conviction:

> The Court would further instruct you that you may consider the testimony relating to the prior conviction of the defendant only for the purpose of determining the intent the defendant may have had pertaining to the charge alleged.

We have previously held that proof of other criminal activity which is independently relevant to the main issue and tends to prove some material point rather than merely that the defendant is a criminal may be admissible with the proper cautionary instruction. *See Young* v. *State*, 296 Ark. 394, 757 S.W.2d 932 (1988). This concept has been applied to show other sexual acts between the victim and accused. *Id.* We see no reason why it should not apply in the case before us.

### Directed Verdict

The appellant moved for a directed verdict on three grounds: 1) the criminal information was vague and erroneous in stating that the event occurred "on or about November 2, 1989"; 2) the appellant's age was not proven which was an essential element of the crime charged; and 3) the victim's incompetency at trial rendered her hearsay statements to her mother presumptively inadmissible.

We have held that in an information reciting that a sexual abuse act occurred "on or about April 27, 1985," the state need not specify a date beyond this unless the time was somehow material to the allegation. *See Johnson* v. *State*, 292 Ark. 632,

732 S.W.2d 817 (1987). We did not think that more specificity was required in that case, and that conclusion governs us in the case before us. The trial court was correct in denying a directed verdict on this point.

On the second point the state failed to prove before it rested that the appellant was above age eighteen as the first degree sexual abuse statute requires. The appellant was actually 69 years old at time of trial, and the trial court permitted the state to reopen its case to prove that the appellant was over 18, after the appellant's motion for directed verdict but before the appellant had put on his case. Such matters are discretionary with the trial court, and we will not reverse absent abuse of discretion. *See Curtis v. State*, 279 Ark. 64, 648 S.W.2d 487 (1983). (The recalling of a jury for additional evidence was discretionary with the trial court.) We find no prejudice on this point.

The third argument dealing with the competency of the victim to testify and the trustworthiness of her declarations has already been discussed. *See Idaho v. Wright*, 110 S. Ct. 3139 (1990).

Affirmed.

HOLT, C.J., DUDLEY and NEWBERN, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. The basic issue in this case is whether the appellant received a fair trial under the applicable laws. In my opinion there were two (2) significant errors which deprived him of a fair trial.

## 1. *Admissibility of hearsay evidence*

Before trial the prosecuting attorney recognized that he would have difficulty in proving the crime since the alleged victim was probably not competent to testify, and, in addition to proving a touching of the sex organ or the buttocks of the little child, he had to prove that the act of touching was for the purpose of gratifying the sexual desire of either the appellant or the alleged victim. As a result, he filed a motion pursuant to A.R.E. 803(25) for a hearing to determine the trustworthiness of the child's statement to her mother, father, and social worker. He stated that at trial he would offer evidence of those statements and offer evidence of a prior conviction of appellant for sexual abuse. The

trial court heard evidence on the 803(25) motion and ruled that the mother and father could testify about their conversations with the child, and, in addition, ruled that the prior conviction could be used to impeach the credibility of the accused.

At trial, over the appellant's objection, the court allowed the child to testify. Her testimony was confused and contradictory, and, in truth, she was not competent to testify. See *Chambers v. State*, 275 Ark. 177, 628 S.W.2d 306 (1982) for the criteria for determining competency. The trial court then allowed the mother, father, and a social worker to testify about statements the child had made to each of them. Later in the trial, the trial court realized that it had made an error in declaring the child competent and allowing her to testify, so it reversed its ruling, and ordered the child's testimony stricken. It further instructed the jury not to consider the child's testimony. Thus, the sole testimony used to convict the appellant was the hearsay testimony of the mother, father, and social worker. As previously set out, their testimony was admitted under A.R.E. Rule 803(25).

The majority opinion agrees with the appellant's argument that Rule 803(25) is unconstitutional and holds: "Rule 803(25) is constitutionally defective on its face, and we so hold." Yet, the majority opinion affirms the trial court's admittance of the hearsay statements of the mother, father, and social worker because the child's statements were "spontaneous," "consistent," "plausible," and "trustworthy." Such a holding is without a basis under our rules of evidence.

The Arkansas Rules of Evidence govern the proceedings of courts in this State. A.R.E. Rule 101; *Ricarte v. State*, 290 Ark. 100, 717 S.W.2d 488 (1986). They are our sole rules of evidence. Rule 801 defines hearsay. Rule 802 provides: "Hearsay is not admissible except as provided by law or by these rules." Rule 803(1) through (24) provides that the hearsay rule does not apply to those twenty-four (24) specific exceptions. Not one of those exemptions is based upon "consistent" out-of-court statements, "plausible" out-of-court statements, or "trustworthy" out-of-court statements. One exception, 803(2), can be said to apply to "spontaneous" statements, but the majority opinion tacitly concedes that even that exception is not applicable to the testimony of the father and social worker. Thus, the admission of the hearsay

testimony of the father and social worker was unmistakably without a basis under our rules and was in error. As others have previously said, "I would reverse for the reasons set out in the majority opinion."

In addition, and although it is not of consequence to this dissent, the "spontaneous" exception may not be applicable to the mother's testimony since the alleged incident probably occurred at least two (2) days, and most likely two (2) weeks, before the child told her mother. (See appendix pp. A-18 to -21.) However, since that exception was not suggested or proven to be applicable by the prosecutor and was not relied upon by the trial court, the various dates were not fully developed. In addition, the general residual exception, Rule 803(24), would be insufficient in this case just as it was in the almost identical case of *Idaho* v. *Wright*, 497 U.S. ___, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

## 2. *Proof of prior conviction*

The appellant did not receive a fair trial for a second reason. The trial court allowed proof of a prior conviction into evidence during the State's case-in-chief. However, before discussing the specific error, it might be helpful to discuss generally the issue as embodied in the Arkansas Rules of Evidence.

The majority opinion interchangeably discusses Rules 404(b) and 609(a). They serve very different purposes, and should not be confused. Rule 404(b) provides:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identify, or absence of mistake or accident.

Under this rule, evidence of other crimes is admissible in the State's case-in-chief when it furnishes part of the content of the crime. This case might well have been a good example of the application of the rule. Here, the accused worked with up to ten (10) young children, some as young as one year old, at a day care center. He probably changed diapers and changed wet under-

pants. In doing so, it was probably necessary for him to touch the children's buttocks, but without a culpable intent. That would not have been a crime. The additional fact that would make it a crime would be the touching of the buttocks for the purpose of gratifying the sexual desire of at least one of the participants. See Ark. Code Ann. §§ 5-14-108, 5-14-101(8), and original commentary thereto. If it could be shown that appellant had previously been convicted of gratifying his sexual desire by deviate sexual contact, it would tend to show his culpable mental state in this case. See Ark. Code Ann. §§ 5-2-202 to -204. Such proof necessarily requires proof of enough collateral details to show "a proclivity toward a specific act with a person or class of persons with whom the accused has an intimate relationship." See *Free* v. *State*, 293 Ark. 65, 732 S.W.2d 452 (1987) and cases quoted therein. The proof might have also been admissible to show the appellant had the opportunity at the day care center to molest these children. Of course, before testimony of another crime is admitted under Rule 404(b), the probative value of the evidence must be weighed against the danger of unfair prejudice. A.R.E. Rule 403.

On the other hand, Rule 609(a) does not come into play during the State's presentation of direct evidence in its case-in-chief. Rather, it comes into issue during cross-examination and is not designed to furnish part of the content of the crime, but instead, is designed to allow the cross-examiner to attack the credibility of the witness. Subsection (a) of the rule is as follows:

> General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the crime (1) was punishable by death or imprisonment in excess of one [1] year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party or a witness, or (2) involved dishonesty or false statement, regardless of the punishment.

Subsequent subsections of the rule provide that, unlike a Rule 404(b) prior conviction, a prior conviction admitted pursuant to Rule 609(a) for impeachment purposes may not include collateral details and circumstances surrounding the conviction.

Cotchett and Elkind, *Federal Courtroom Evidence* 53 (1986) (citing federal cases).

The case at bar involves proof of a similar crime which was introduced during direct examination of a State's witness in its case-in-chief. Accordingly, it involves proof under Rule 404(b). However, the State did not offer any of the collateral details of the prior crime to the jury. Apparently, the jury was given only the case number and the fact that the accused had committed a prior felony. (Appendix D-27.) Therefore, the proof did not tend to show the culpable mental state of the accused during the touching; instead, it only showed that he was a bad person. Thus, this case should be reversed on this point also.

Unfortunately, the majority opinion discusses a Rule 609(a) prior conviction and, in affirming this case, goes so far as to overrule *Jones v. State*, 274 Ark., 379, 625 S.W.2d 471 (1981), a case involving A.R.E. Rule 609(a). Such a holding violates fair play. If the majority opinion is correct, and if the *Jones* case is applicable and must be overruled, it cannot be overruled ex post facto. *Rhodes v. State*, 276 Ark. 203, 634 S.W.2d 107 (1982). If the *Jones* holding is involved in this case, it is now the law of the case and can be overruled only prospectively. *Rhodes v. State, supra.*

For the two (2) stated reasons, it is my opinion that the appellant did not receive a fair trial.

HOLT, C.J., and NEWBERN, J., join in this dissent.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
## NOVEMBER 11, 1991

818 S.W.2d 951

*Carolyn Whitefield*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sally Moll*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. For his petition for rehearing, the appellant argues that the trial judge used Ark. R. Evid.

803(25) in his decision to admit hearsay evidence and that because we held Rule 803(25) to be unconstitutional in our original opinion, the trial judge's admission of the hearsay testimony constituted reversible error. The petition for rehearing is denied, and we reaffirm the conviction.

With respect to Rule 803(25), our original opinion is amended by plurality decision. The hearsay statements at issue on appeal are the child's separate statements to her mother and father about the molestation. The child made the statements to her mother immediately after waking from a nightmare late at night and to her father the following morning. Both parents testified to those statements at trial. We recognized in our original opinion that since the child's statements to her mother followed a nightmare that caused her to become extremely agitated, they were admissible under the excited utterance exception set forth in Ark. R. Evid. 803(2) as well as under the factors referenced in *Idaho* v. *Wright*, 110 S. Ct. 3139, 111 L.Ed.2d 638 (1990). The father's hearsay testimony the next morning, though largely cumulative to the mother's, was only admissible under the *Wright* criteria.

In *Wright*, the Court identified four criteria that had been used in various jurisdictions to determine the trustworthiness of hearsay statements: a) spontaneity and consistent repetition; b) the mental state of the declarant; c) the use of terminology unexpected of a child of similar age; and d) the lack of a motive to fabricate. The Court specifically held in *Wright* that consideration of evidence corroborating the commission of the crime was irrelevant to the hearsay inquiry and, thus, was constitutionally impermissible.

We noted in our original opinion that there was no evidence corroborating the commission of the crime (such as medical testimony of physical trauma) that was used by the trial court in making its decision to admit the hearsay testimony. Defense counsel confirmed this at the Rule 803(25) hearing preceding the trial when she said:

> Any other corroborative evidence of the act which is subject to the statement. Here we have the testimony of the parents and of [the social worker] that there was no medical indication of abuse. So, there is no outside corroborative evidence.

Without the existence of the impermissible corroborative evidence, the trial judge could not have considered it under Rule 803(25)(A)1.*l*, despite his having made the general statement that he had considered all of the Rule 803(25) criteria. We did not reverse the appellant's conviction in our original decision, though Rule 803(25) did contain the suspect corroborative evidence factor, because no corroborative evidence was introduced at trial or considered by the trial court.

We applied the *Wright* factors in our original opinion in affirming the admissibility of both the mother's testimony and the father's, although, again, the mother's testimony also qualified under the excited utterance exception. One question left unanswered is the precise vehicle to be used for our application of these factors. Our Rules of Evidence state that hearsay is not admissible except as provided "by law or by these rules." Ark. R. Evid. 802. The *Wright* factors have not been formally adopted by rule of this court. That raises the question of whether the factors as set out in *Idaho* v. *Wright* qualify as "law" under our Rule 802 and, further, whether our original opinion in this case is "law" for Rule 802 purposes. In 1990 we held that our rules of evidence are supreme in establishing hearsay exceptions. *See State* v. *Sypult*, 304 Ark. 5, 800 S.W.2d 402 (1990).

What cannot be overlooked in this case is the fact that the *Wright* factors were present and were benchmarks for the trustworthiness of the child's statements. To some extent they are embraced within the Rule 803(25) criteria, which the trial judge considered. They also are available for consideration by a trial judge under the Rule's catch-all subparagraph which renders applicable "any other factor which the court at the time and under the circumstances deems relevant and appropriate." Ark. R. Evid. 803(25)1.m. Spontaneity and consistent repetition figured in this case, as the prosecutor and social worker stated to the court at the Rule 803(25) hearing. No motive to fabricate was presented by the defense. At the age of 2½ when the statements were made, the child had no knowledge of child/adult sexual activity, according to the mother. The description of the sexual act by the child was void of explicit sexual terminology. These were all matters that the trial judge had to consider because they were present in this case.

The Court in *Idaho* v. *Wright* held that corroborative evidence such as that contemplated in our Rule 803(25)(A)1.*l*

violates a defendant's Sixth Amendment rights. Our Rule 803(25)(A)1.*l* is, therefore, clearly constitutionally suspect. Our original opinion, accordingly, is revised to limit the invalidation of Rule 803(25) to the suspect subparagraph *l*. The balance of Rule 803(25) remains intact. By retaining the balance of Rule 803(25), this permits consideration of the *Wright* criteria as relevant factors at the trial court's discretion under Rule 803(25)(A)1.m

HAYS, GLAZE, and CORBIN, JJ., concur.

HOLT, C.J., DUDLEY and NEWBERN, JJ., dissent.

TOM GLAZE, Justice, concurring. While I join the majority court, I also register my disagreement with the majority court's decision in *Idaho* v. *Wright*, 110 S.Ct. 3139 (1990), that is the source of the residual hearsay issue with which our court is confronted in this issue.[1] In a sharply divided decision (5-4), the Court held Idaho's residual hearsay exception rule to be unconstitutional, because for confrontation purposes, the residual hearsay rule was not a firmly rooted hearsay exception. The majority stated that hearsay evidence used to convict an accused must possess indicia of reliability by virtue of its inherent trustworthiness and not by reference to corroborating evidence at trial.

The dissenting justices in *Wright* took the majority court to task, stating their views that no constitutional justification existed to support the majority's decision to remove corroborating evidence from consideration of the question whether a child's statements are reliable. The dissent pointed out the obvious — it is a matter of common sense for most people that one of the best ways to determine whether what someone says is trustworthy is to see if it is corroborated by other evidence. To illustrate, the dissenting justices alluded to the child abuse case as an example, stating that, if part of the child's hearsay statement is that the assailant tied her wrists or had a scar on his abdomen, there is physical evidence or testimony to corroborate the child's statement. In other words, such physical evidence would show the child likely did not fabricate the abuse allegations, therefore making the child's story more worthy of belief. The dissenting opinion further sets out legal authority and commentary that, in

---

[1] Since the *Wright* decision, one member comprising the majority court has resigned and his vacancy has since been filled with a new appointment.

my view, destroys the rationale employed by the majority court in its decision to strike down the corroborating residual hearsay rule — a rule which is identical to Arkansas's rule at issue in this case.

Little else can be gained by a further discussion of the *Wright* decision and the dissenting justices' views except to say that I respectfully hope the Supreme Court quickly reexamines that holding and mercifully overrules it.

HAYS and CORBIN, JJ., join this concurrence.

ROBERT H. DUDLEY, Justice, dissenting. Before the trial on the merits, the State gave notice that, pursuant to A.R.E. Rule 803(25), it sought a hearing to determine the trustworthiness of the child's statements to her mother and father, as well as her statement to a social worker. The trial court held the hearing and, in its finding of fact, expressly stated that it considered each of the criteria of Rule 803(25) and found that the statements to the mother and father possessed a "reasonable likelihood of trustworthiness." The trial court did not rule on the competency of the child to testify, and did not rule that the social worker assigned to the case could give hearsay testiony under A.R.E. Rule 803(25).

At trial, the court ruled that the child was competent to testify; later reversed its ruling and ordered the child's testimony stricken. However, the court allowed the prosecutor to put the social worker's testimony in evidence as "not going to the truth of the matter asserted." The record of that ruling and testimony is as follows:

MS. WHITEFIELD [Appellant's attorney]:
Objection, Your Honor, to what she said.

MR. HUDSON [Prosecuting attorney]:
With the court's that is already in evidence. We don't offer it at this time for the truth of the matter. Only to show Ms. Howard was acting in response to that.

THE COURT:
It's admitted for the limited purpose.

A.    [Social worker]: I explained to Lindsey that I had some special dolls, and that I could bring them out if she could show me with these dolls what happened to her. So, I brought out these same dolls. What she did was she undressed, if I remember correctly, all of the figures except

the young male. And after she got them undressed, she put her finger, fingers in the vaginal area of the female dole [sic], and she said to me, "Papaw George put his fingers in me."

The only testimony used to convict the appellant was the hearsay testimony of the mother, father, and social worker. That testimony was admitted under A.R.E. Rule 803(25). The appellant appealed and argued that A.R.E. Rule 803(25) was unconstitutional. The original majority opinion, *George* v. *State*, 306 Ark. 360, 813 S.W.2d 792 (1991), stated that the only incriminating evidence came in through A.R.E. Rule 803(25) and that rule was unconstitutional. Even so, the original majority opinion, with three (3) judges dissenting, affirmed the conviction. On rehearing, the supplemental opinion tacitly admits that the original opinion was in error, but rather than grant rehearing changes the basis of the original opinion. The supplemental opinion now holds that 803(25) is a severable legislative act and, since the trial judge did not apply the unconstitutional part of the act, 803(25)(A)(1)(*l*), the decision remains affirmed.

## I.

The short answer to the supplemental opinion is that the trial court did consider each of the factors, including the admittedly unconstitutional provision 803(25)(A)(1)(*l*), in allowing the testimony of the father and mother. The trial court's finding of fact on this issue is as follows:

> The court is called on to make a determination, not of whether or not the victim is a competent witness here today, but whether or not the criteria set out in Arkansas Rules of Evidence 803 subparagraph 25 *enumerated specifically as a thru m*, the court has previously announced that it has concluded, it is, the court is required to consider *all of those criteria*, and the court, also, makes its decision today on the assumption that the legislature intended for those criteria to be used specifically, and in the test of the statement offered, as opposed to whether or not the victim is a competent witness. The court finds that the state has, by a preponderance of the evidence, met the criteria required under Arkansas Rule 803 subparagraph 25. Taken as a whole, the court finds there is a reasonable likelihood of trustworthiness of the statement of the

mother. That is the ruling of the Court.

Secondly, the trial court's ruling that the quoted hearsay testimony of the social worker was admitted for a "limited purpose" and "did not go to the truth of the matter asserted" was such a misapplication of the non-hearsay rule that it needs no comment.

## II.

There are other fundamental reasons the supplemental opinion is in error. The first reason involves the validity of the legislative enactment of A.R.E. Rule 803(25).

## A.

The Uniform Rules of Evidence were enacted by an invalid session of the General Assembly. *See Ricarte* v. *State*, 290 Ark. 100, 717 S.W.2d 488 (1986). This court declared their enactment invalid, but then, under our rule-making authority, adopted them as court rules. We adopted the Uniform Rules of Evidence "as they are set forth in Act 1143 of 1975 (Extended Session, 1976)." *In re Adoption of the Uniform Rules of Evidence*, 290 Ark. 616, 717 S.W.2d 491 (1986) (Per Curiam). A.R.E. Rule 803(25) is not set forth in Act 1143 of 1975 (Extended Session, 1976). It was not enacted until 1985. *See* 1985 Ark. Acts 405 § 1. Thus, this court has never adopted Rule 803(25).

In *St. Clair* v. *State*, 301 Ark. 223, 783 S.W.2d 835 (1990), we held that the separation of powers doctrine did not preclude the General Assembly from enacting Rule 803(25) as a rule of evidence, and we affirmed its use in a criminal prosecution.

However, in *State* v. *Sypult*, 304 Ark. 5, 800 S.W.2d 402 (1990), we reversed ourselves. We held that the legislature could not create an "exception to our rules of evidence." The plurality opinion in *Sypult* states that "we retreat from the positions we have taken in *Curtis* and *St. Clair, supra*," and that allowing the General Assembly to write the rules of evidence "could well open the door to total abrogation of the rules of evidence and procedure we deem vital to the interest and policies inherent in the judicial process." *Sypult*, 304 at 7, 800 S.W.2d at 404. Justice Newbern's concurring opinion expressed the view that rules of evidence are procedural in nature and that "it will be helpful for all to understand that the Arkansas Rules of Evidence are the primary,

general source of evidence law." *Id.* at 13, 800 S.W.2d at 407. Justice Turner's concurring opinion, in which Justice Price joined, expressed, among other things, the need for uniformity and clarity so that lawyers and judges would have one place to look for the rules of evidence. Only two justices dissented from the holding.

In sum, this court alone can adopt procedural rules of evidence. Rule 803(25) is such a rule of evidence and has never been adopted by this court. The supplemental opinion's dictum about severability of subsection (A)(1)(*l*) of the General Assembly's enactment of 803(25) is meaningless.

## B.

In addition, the supplemental opinion implies that the Supreme Court of the United States created a new Arkansas rule of evidence in *Idaho* v. *Wright*, 110 S. Ct. 3139 (1990). In that case, the Supreme Court did not create a state rule of evidence. It did not attempt to do so; it could not do so. It only declared that the admission of a child's hearsay statement under Idaho's residual hearsay exception violated the accused's rights under the Confrontation Clause.

## III.

Even if the *Sypult* doctrine is not considered, and, even if one looks to the legislature or the Supreme Court for this rule of evidence, the supplemental opinion is still in error.

## A.

Arkansas Rule of Evidence 801(c) provides that, " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 802 provides, "Hearsay is not admissible except as provided by law or by these rules." Rule 803 then provides exceptions to Rule 802, which are phrased in the terms of *nonapplicability of the hearsay rule*, rather than in terms of positive admissibility, in order to repeal any implication that other grounds for exclusion are eliminated. The theory behind Rule 803 and its first twenty-four (24) exceptions, is that, under appropriate circumstances, a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify the nonproduction of the declarant even though he may be

able to testify. It provides: "The following *are not excluded* by the hearsay rule, *even though the declarant is available as a witness*." A.R.E. Rule 803 (Emphasis added). Twenty-four (24) exceptions follow in our Rules. Perhaps the best known is number (2). It is: "Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." A.R.E. Rule 803(2).

The legislatively enacted number (25) is not phrased in terms of nonapplicability of the hearsay rule, but, instead, provides that a child's hearsay "is admissible." Apparently, it is admissible in spite of any other ground of inadmissibility. Under it, hearsay evidence is admissible if it only possesses a "reasonable likelihood of trustworthiness." The rule provides that the hearsay statement of a child ten years old, or younger, is to be admitted in evidence even though the child is available to testify. (Rule 804 deals with hearsay exceptions when the declarant is unavailable). In sum, Rule 803(25) defies the symmetry of Rule 803 and the first twenty-four (24) hearsay exceptions and provides that the hearsay statements of a young child are not hearsay upon proof of certain criteria. The Rule is as follows:

A statement made by a child under ten (10) years of age concerning any act or offense against that child involving sexual offenses, child abuse or incest is admissible in any criminal proceeding in a court of this State, provided:

1. The Court finds, in a hearing conducted outside the presence of the jury, that the statement offered possesses a reasonable likelihood of trustworthiness using the following criteria:

    a.  the age of the child
    b.  the maturity of the child
    c.  the time of the statement
    d.  the content of the statement
    e.  the circumstances surrounding the giving of the statement
    f.  the nature of the offense involved
    g.  the duration of the offense involved
    h.  the relationship of the child to the offender
    i.  the reliability of the assertion
    j.  the reliability-credibility of the child witness

before the Judge

    k.   the relationship or status of the child to the one offering the statement

    l.   any other corroborative evidence of the act which is the subject of the statement

    m.   any other factor which the Court at the time and under the circumstances deems relevant and appropriate.

2.    The proponent of the statement shall give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement.

3.    If a statement is admitted pursuant to this Section the Court shall instruct the jury that it is for the jury to determine the weight and credit to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factors.

4.    This Section shall not be construed to limit the admission of an offered statement under any other hearsay exception or applicable Rule of Evidence.

A.R.E. Rule 803(25).

## B.

The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, operates in two (2) ways to restrict the range of admissible hearsay evidence. First, the state must either produce the declarant for cross-examination or show a good reason for his unavailability. Here, the child was declared incompetent to testify. The Supreme Court has not yet decided whether incompetency constitutes this type of unavailability. *Idaho* v. *Wright*, 110 S. Ct. 3139, 3147 (1990). Certainly, a strong argument can be made that, if a declarant is not competent to testify in court, his statements made out of court to a third party are not somehow rendered competent so that they can be repeated in court. Even so, for the purposes of this dissent, it is assumed that the child who was not competent to testify at trial was "unavailable" as defined by our Rules of Evidence and *Ohio* v. *Roberts*, 448 U.S. 56 (1980). Second, once a witness is shown to be unavailable, his statement is admissible only if it bears "*adequate indicia of*

*reliability.*" If the evidence does not fall within a firmly rooted hearsay exception, such as the "excited utterance," it is *presumptively unreliable and inadmissible* for Confrontation Clause purposes. To fall within the admissible category, the evidence must show that "the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility. . . ." *Idaho* v. *Wright*, 110 S. Ct. at 3146 and 3149. In explaining the evidence required to make the declarant's truthfulness so clear, the court used deeply rooted exceptions as examples. The opinion provides:

> The basis for the "excited utterance" exception, for example, is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous. See, *e.g.*, 6 Wigmore, *supra*, §§ 1745-1764; 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 803(2)[01] (1988); Advisory Committee's Note on Fed. Rule Evid. 803(2), 28 U.S.C. App., p. 778. Likewise, the "dying declaration" and "medical treatment" exceptions to the hearsay rule are based on the belief that persons making such statements are highly unlikely to lie. See, *e.g., Mattox*, 156 U.S., at 244, 15 S. Ct., at 340 ("[T]he sense of impending death is presumed to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of oath"); *Queen* v. *Osman*, 15 Cox Crim. Cas. 1, 3 (Eng. N. Wales Cir. 1881) (Lush, L. J.) ("[N]o person, who is immediately going into the presence of his Maker, will do so with a lie upon his lips"); Mosteller, Child Sexual Abuse and Statements for the Purpose of Medical Diagnosis or Treatment, 67 N.C. L. Rev. 257 (1989). "The circumstantial guarantees of trustworthiness on which the various specific exceptions to the hearsay rule are based are those that existed at the time the statement was made and do not include those that may be added by using hindsight." *Huff* v. *White Motor Corp.*, 609 F.2d 286, 292 (CA7 1979).

*Idaho* v. *Wright*, 110 S. Ct. at 3149.

The supplemental opinion in the case at bar refers to Rule

803(25)'s "catch-all subparagraph." In *Wright*, in discussing the somewhat comparable residual exception rule, the Court wrote:

> We note at the outset that Idaho's residual hearsay exception, Idaho Rule Evid. 803(24), under which the challenged statements were admitted, App. 113-115, is not a firmly rooted hearsay exception for Confrontation Clause purposes. Admission under a firmly rooted hearsay exception satisfies the constitutional requirement of reliabiltiy because of the weight accorded longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements. See *Mattox*, 156 U.S., at 243, 15 S. Ct., at 339; *Roberts*, 448 U.S., at 66, 100 S. Ct., at 2539; *Bourjaily*, 483 U.S., at 183, 107 S. Ct., at 2782; see also *Lee*, 476 U.S., at 551-552, 106 S. Ct., at 2067-2068 (BLACKMUN, J., dissenting) ("[S]tatements squarely within established hearsay exceptions possess 'the imprimatur of judicial and legislative experience' . . . and that fact must weigh heavily in our assessment of their reliability for constitutional purposes") (citation omitted). The residual hearsay exception, by contrast, accommodates ad hoc instances in which statements not otherwise falling within a recognized hearsay exception might nevertheless be sufficiently reliable to be admissible at trial. See, *e.g.*, Senate Judiciary Committee's Note on Fed. Rule Evid. 803(24), 28 U.S.C. App., pp. 786-787; E. Cleary, McCormick on Evidence § 324.1, pp. 907-909 (3d ed. 1984). *Hearsay statements admitted under the residual exception, almost by definition, therefore do not share the same tradition of reliability that supports the admissiblity of statements under a firmly rooted hearsay exception. Moreover, were we to agree that the admission of hearsay statements under the residual exception automatically passed Confrontation Clause scrutiny, virtually every codified hearsay exception would assume constitutional stature, a step this Court has repeatedly declined to take.* See *Green*, 399 U.S., at 155-156, 90 S. Ct., at 1933-1934; Evans, 400 U.S., at 86-87, 91 S. Ct., at 218-219 (plurality opinion); *Inadi*, 475 U.S., at 393, n. 5, 106 S. Ct., at 1125, n. 5; see also *Evans, supra*, 400 U.S., at 94-95, 91 S. Ct., at 222-223 (Harlan, J., concurring in result). ·

*Id.* at 3147-3148 (Emphasis added).

Rule 803(25) is constitutionally infirm. It provides that the hearsay statement of a child ten years old, or younger, *is admissible* upon a showing only that it possesses a *"reasonable likelihood of trustworthiness."* On its face, this is a lesser sltandard than is required by the Confrontation Clause which requires that the statement bear such an *"adequate indicia of reliability"* that *"the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility." Id.* at 3146 and 3149 (emphasis added).

The Supreme Court of the United States has interpreted the Confrontation Clause of the Sixth Amendment in *Idaho* v. *Wright*, 110 S. Ct. 3139 (1990). That case is precedent for the case at bar. Our form of federalism requires this court to follow the Supreme Court interpretation of matters relating to the Constitution of the United States.

### IV.

In conclusion, this court alone can adopt the procedural rules of evidence. It has never adopted A.R.E. Rule 803(25). However, even ignoring the fact that we have never adopted the rule, precedent of the Supreme Court of the United States mandates that A.R.E. Rule 803(25) be held unconstitutional. Rehearing should be granted, and the appellant should be given a fair trial: After all the opinions in this case, the fact remains that the appellant stands convicted of a felony, but the only testimony against him is the hearsay testimony quoting a witness who was declared incompetent.

HOLT, C.J., and NEWBERN, J., join in this dissent.