Marilyn Kelly, J.
(dissenting). I concur with the result reached in part 111(A) of the majority opinion. Specifically, I agree that MCL 768.27a and MRE 404(b) irreconcilably conflict.
However, I strongly dissent from the majority’s conclusion in part III(B) that MCL 768.27a prevails over MRE 404(b). I would hold that MCL 768.27a is an unconstitutional legislative intrusion into the power of the judiciary to “establish, modify, amend and simplify the practice and procedure in all courts of this state.”[1] Because I would hold that MCL 768.27a is unconstitu *497 tional, I would not reach the issues discussed in parts III(C) and (D) of the majority opinion. Finally, I disagree with the decision in part IV(A) of the majority opinion to affirm defendant Watkins’s convictions and the criticism in part IV(B) of the trial court’s MRE 403 analysis regarding defendant Pullen.
Accordingly, I would reverse the Court of Appeals’ judgment in Watkins, overrule its prior holding in People v Pattison[2] that MCL 768.27a is constitutional, and remand Watkins for a new trial. In Pullen, I would affirm the Court of Appeals’ judgment and its conclusion that the trial court did not abuse its discretion by excluding the challenged evidence under MRE 403.
LEGAL BACKGROUND
The Michigan Constitution divides the state’s government into three branches: the legislative, the executive, and the judicial.[3] Judicial power is vested exclusively in the judiciary.[4] The Constitution grants this Court the authority to make rules that “establish, modify, amend and simplify the practice and procedure *498 in all courts of this state.”[5] Therefore, if the Legislature enacts a statute that conflicts with a court rule, the rule prevails over the statute if both address a matter of “practice and procedure.”[6]
This constitutional provision was long understood to vest in this Court the power to promulgate all rules of evidence used in court proceedings.[7] However, in Mc-Dougall v Schanz,[8] a majority of this Court overruled that precedent. The McDougall majority held that this Court’s authority over “practice and procedure” did not include all matters relating to the admission of evidence.[9] Instead, it held that a legislatively created rule of evidence would not violate article 6, § 5 of the Michigan Constitution unless “ ‘no clear legislative policy reflecting considerations other than judicial dispatch of litigation can be identified [10] In sum, McDougall held that a substantive rule of evidence created by the Legislature prevails over a Court-created substantiye rule of evidence. McDougall also noted that “this Court is not authorized to enact court rules that establish, abrogate, or modify the substantive law.”[11]
*499 In Pattison, the Court of Appeals relied on McDougall and concluded that MCL 768.27a was a substantive, not a procedural, rule of evidence. As a result, Pattison held that the statute did not violate the separation of powers provision of the Michigan Constitution. The panel reasoned that the statute “does not principally regulate the operation or administration of the courts,” but instead “reflects the Legislature’s policy decision that, in certain cases, juries should have the opportunity to weigh a defendant’s behavioral history and view the case’s facts in the larger context that the defendant’s background affords.”[12]
MCL 768.27a VIOLATES THE SEPARATION OF POWERS PROVISION under McDougall when McDougall is correctly applied[13]
MCL 768.27a should fail the McDougall test. The statute does not implement a “clear legislative policy reflecting considerations other than judicial dispatch of litigation.”[14] To be sure, the statute may very well have been enacted to address legislative policy concerns; such a conclusion seems beyond dispute. The majority *500 identifies several public policy concerns supporting the Legislature’s decision to enact MCL 768.27a. They include (1) the high rate of recidivism among child molesters, (2) the difficulty of obtaining evidence that secures convictions in child-molestation cases, and (3) the desire to further protect children from molestation.
These are laudable public policy concerns. But their laudatory nature is irrelevant for purposes of this Court’s analysis of the issue involved in this case. The Legislature’s public policy considerations in enacting a statute can neither dictate nor disguise whether the statute enacted to address those considerations is a proper exercise of legislative authority.[15]
The crucial question is not whether the policy concerns themselves are substantive. Rather, it is whether the effect of the statutory enactment changes substantive law. If the statute affects strictly procedural rather than substantive matters, that statute violates Const 1963, art 6, § 5.[16] Contrary to the majority’s conclusion, enacting MCL 768.27a to achieve the Legislature’s policy goals does not, as the Constitution puts it, reflect considerations beyond the judicial dispatch of litigation.
*501 When the Legislature enacted MCL 768.27a, the sole mechanism it used to achieve its policy concerns was to alter the standard under which other-acts evidence is admissible in court.[17] Thus, the relevant policy consideration that we must analyze is precisely that: Is the admission of previously inadmissible evidence in child-sex-abuse cases a substantive or a procedural issue?[18] This conclusion is consistent with our rule of statutory construction that “[i]n determining the intent of the Legislature, this Court must first look to the language of the statute.”[19] The majority’s application of McDougall fails this principle by failing to look first at the statutory language.
“It is fundamental to American jurisprudence that ‘a defendant must be tried for what he did, not for who he is.’ ”[20] MRE 404(b) regulates how and when relevant *502 evidence of a defendant’s other crimes, wrongs, or acts may be admitted in court. As such, it is fundamentally procedural in nature because it concerns a matter that is solely within the province of the judiciary: the “judicial dispatch of litigation.”[21]
It is also noteworthy that the Legislature’s placement of MCL 768.27a supports my conclusion that MCL 768.27a is a procedural rule. MCL 768.27a is contained within the Code of Criminal Procedure,[22]
The majority correctly observes that the statute “reflects a substantive legislative determination that juries should be privy to a defendant’s behavioral history in cases charging the defendant with sexual misconduct against a minor.”[23] But this observation only makes my point. This observation is relevant not as a “substantive” basis for the statute. Rather, it is relevant to demonstrate what the Legislature attempted to do by enacting it: to regulate the courts by telling them what evidence juries can hear. The course of action the Legislature prescribes to accomplish its policy goals in MCL 768.27a — telling courts how to operate — is a regulation of the judicial dispatch of litigation. It does nothing more. Simply put, the Legislature cannot “modify... the practice and procedure in all courts of this state.”[24]
The Washington Supreme Court very recently reached a similar conclusion and invalidated its state’s *503 similarly worded statute permitting the admission of propensity evidence in sexual abuse cases.[25] Relying on its inherent power to prescribe rules of “procedure and practice,” the court reasoned that “admission of evidence in a criminal trial is generally a procedural matter.”[26] The court invalidated the statute, all the while recognizing its stated purpose: “ ‘to ensure that juries receive the necessary evidence to reach a just and fair verdict.. . .’ ”[27]
In another analogous case, the New Hampshire Supreme Court provided the following persuasive analysis:
Rule 404(b) is a prime example of an internal procedural rule designed to effectuate a constitutional right. .. . Rule 404(b) is simply a procedural means by which the fair trial right is secured. Giving deference to the legislature would, in this instance, abolish the rule’s purpose and interfere with the judiciary’s sound discretion in determining to what extent the rule serves its function in the circumstances of a particular case.
Because the proposed bill directly conflicts with Rule 404(b), a rule concerning a uniquely judicial function, the separation of powers doctrine is violated. The legislature has no more right to break down the rules prescribed by this court to assure fundamental due process in criminal and civil trials than the court has to prescribe the mode and manner in which the legislature shall perform its legislative duties.[28]
*504 In sum, when a statute’s only function is to tell the courts what evidence they may admit in a court proceeding, the statute must give way to a conflicting court rule. MCL 768.27a is such a statute, and it conflicts with MRE 404(b). Accordingly, MCL 768.27a violates Const 1963, art 6, § 5, and this Court should declare it null and void.
My reasoning is not inconsistent with McDougall, nor would it restore the holding of Perin v Peuler (On Rehearing)[29] that all rules of evidence are procedural. Numerous authorities, including some cited by the McDougall majority, have identified evidentiary rules that are likely substantive declarations of policy outside the scope of the judiciary’s rulemaking power.[30] It is unsurprising that courts and commentators might identify these rules as substantive for reasons I have previously identified. These rules do far more than dictate what evidence is admissible in a court proceeding; they directly affect people’s out-of-court behavior.[31]
*505 The majority asserts that “as a purely functional matter. .., all evidentiary rules tell the courts what evidence is admissible.”[32] Noting my reference to privileges as possible substantive rules of evidence, the majority proclaims that “rules relating to privilege still serve the exclusive function of telling the courts what evidence is admissible at trial and, therefore, would be procedural under [my] test.”[33] Not so. Most rules relating to privileges create a substantive right to confidentiality between parties such as doctors and patients,[34] attorneys and clients,[35] or clergy and penitents.[36] These privileges exist independently from judicial proceedings. They also regulate courts by preserving confidentiality in the courtroom. That these privileges were created to exist outside the courtroom indicates the existence of a “legislative policy reflecting considerations other than judicial dispatch of litigation . . . ,”[37] *506 The function of these statutes is to create a substantive right, with an incidental effect on the admissibility of evidence in a court proceeding.[38]
The majority insists that my analysis would render Michigan’s rape-shield statute[39] unconstitutional. It cites a Colorado Supreme Court case holding that that state’s rape-shield statute did not violate its state constitution’s separation of powers clause.[40] There is a large problem with the majority’s attempt to use this case to undermine my analysis. The Colorado Supreme Court specifically noted that its rape-shield statute had a “mixed policy and procedural nature,” and upheld it because of the “absence of any conflicting rule adopted by this court. . . .”[41] Thus, the Colorado Supreme Court strongly implied that it might very well have reached the opposite result had there been a conflicting court rule. By contrast, the decisions from the Supreme Courts of Washington, New Hampshire, and Tennessee cited in this opinion are persuasive and directly on point.[42]
*507 In sum, MCL 768.27a differs from those rules that create, modify, or eliminate legal rights or duties. It exists solely to change the standard for the admission of evidence in a courtroom, a procedural matter solely within the province of the judiciary. For the reasons previously stated, I conclude that MCL 768.27a is a quintessential “procedural” rule involving the “dispatch of judicial business” under McDougall. Because it conflicts with MRE 404(b) and regulates a matter of procedure, the Legislature overstepped its constitutional authority under Const 1963, art 6, § 5 by enacting it.[43]
THE MAJORITY ERRS BY RELYING ON McDOUGALL BECAUSE IT IS FUNDMENTALLY FLAWED AND NOT FAITHFUL TO THE AUTHORITIES ON WHICH IT RELIED
Unfortunately, the entire previous discussion regarding the proper application of McDougall amounts to much ado about nothing. This is so because, just as in McDougall, once any “policy consideration” is identified that supports the statute, our corresponding rule — should it conflict — becomes a nullity.[44]
*508 The majority applies McDougall perfunctorily and concludes that MCL 768.27a prevails over MRE 404(b) because it is based on “policy considerations ‘over and beyond matters involving the orderly dispatch of judicial business’ . . . .”[45] As previously explained, the majority’s conclusion is not a foregone one under McDougall, nor is it in accord with the bulk of existing authority addressing this issue. Hence, because the majority reaches an incorrect result due to its flawed application of the McDougall test, I must address the validity of the McDougall test.
I conclude that the McDougall test for analyzing whether a statute is substantive or procedural (or, at a minimum, the majority’s application of that test) is overly simplistic and underinclusive. Thus, I disagree with the majority’s assertion that McDougall “established a sensible approach to separate procedural rules of evidence ... from substantive rules of evidence ... .”[46] The test should be either refined or discarded because it is not consistent with the historical authority on which it purports to be based.[47]
First, the majority’s application of McDougall is cursory. The majority takes a mere four paragraphs of analysis to support its conclusion that “MCL 768.27a is *509 a valid enactment of substantive law. .. .”[48] That the McDougall test allows for such brevity of analysis in resolving this issue is a liability, not an asset. The substance/procedure divide is a far thornier question than the majority’s application of McDougall acknowledges. Other courts, as well as many commentators, have recognized and readily conceded this tension.[49] Indeed, even the McDougall majority acknowledged it.[50] But that prescient acknowledgment dies a quick death at the hands of this majority, given that its substance/procedure analysis begins with shovel in hand and a six-foot-deep hole. Its analysis is as effortless as it is superficial.
Second, the McDougall test as applied is also vastly underinclusive in defining what rules qualify as procedural.[51] Nor is it faithful to the authority on which it *510 purports to be grounded. The language “orderly dispatch of judicial business” and “public policy, having as its basis something other than court administration” seized on in McDougall lacks the proper context and is grossly overstated. The authors of the law review article that articulated this language themselves recognized as much.[52] One authority on which the McDougall majority relied said that rules of “practice” include those that “prescribe the methodology for initiating, conducting, and concluding litigation . . . ,”[53] Another authority that the McDougall majority cited identified procedural *511 rules as those “based upon policies concerned with the reliability or relevance of proof or the orderly dispatch of judicial business.”[54]
The McDougall test also ignores that the vast majority of courts and commentators, again including those relied on by the McDougall majority, have concluded that most rules of evidence are procedural.[55] Thus, the majority’s attempt to counter my criticism of the Mc-Dougall test as “vastly underinclusive” by calling my approach “vastly overinclusive” is unavailing.[56] McDougall’s sharply limited “judicial dispatch of business” test, at least as applied, invites the Legislature to supersede most of the Michigan Rules of Evidence. Under McDougall, nearly every rule can be characterized as substantive.[57]
Finally, the McDougall test gives the Legislature license to intrude with impunity into the province of the judiciary provided that it divines a “substantive” label for its statutory enactments.[58] This is so irrespective of *512 whether that which the statute accomplishes is substantive or procedural. Surely the delegates involved in crafting article 6, § 5 did not intend to allow the Legislature to neuter this Court’s authority to regulate “practice and procedure” in this fashion.
For all these reasons, I conclude that the McDougall test for resolving the substance/procedure question is fundamentally flawed. At a minimum, the majority’s mechanical application of it demonstrates how inadequate it is to resolve the difficult questions presented by cases such as this. I would refine the test in the manner described in this opinion if the test cannot be discarded altogether, because the majority appears unwilling or unable to apply it consistently with its intellectual genesis.[59]
MCL 768.27a AND MRE 403
Because I would strike down MCL 768.27a as unconstitutional, it is unnecessary for me to reach the qu.es *513 tion of how MCL 768.27a and MRE 403 interact. Other-acts evidence admitted pursuant to MRE 404(b) is indisputably subject to balancing under MRE 403. Thus, I do not reach the issues discussed in parts III(C) and (D) of the majority opinion.
APPLICATION
I would hold that MCL 768.27a is an unconstitutional violation of the separation of powers provision set forth in Const 1963, art 6, § 5. In Watkins, the Court of Appeals erroneously concluded that the statute did not violate the separation of powers and that much of the evidence against Watkins had been properly admitted under MCL 768.27a. Therefore, I would reverse the judgment of the Court of Appeals and remand Watkins for a new trial. I would direct the trial court to use MRE 404(b) and MRE 403 on remand to evaluate the admissibility of the other-acts evidence.
In Pullen, I would affirm the judgment of the Court of Appeals. Although the trial court erred by concluding that the other-acts evidence was admissible under MCL 768.27a, the error was harmless because the court excluded the evidence under MRE 403. “Rule 403 determinations are best left to a contemporaneous assessment of the presentation, credibility, and effect of testimony” by the trial court.[60] In this case, the trial court’s decision to exclude the evidence was within the range of principled outcomes and, therefore, not an abuse of discretion.[61]
The majority identifies four purported flaws in the Pullen trial court’s application of MRE 403. I disagree *514 with each analysis. With respect to the first two, as previously noted, I would conclude that MCL 768.27a is unconstitutional. Thus, I need not reach the question of whether MRE 403 would apply differently to evidence admitted under the statute rather than under MRE 404(b). Other-acts evidence is admissible only under MRE 404(b), which does not allow its admission to show that a defendant had a propensity to commit the charged offenses.[62] Hence, the other-acts evidence in Pullen was not admissible for that purpose.
Because the evidence was not admissible to show propensity, the trial court did not err by “failfing] to weigh the propensity inference in favor of the evidence’s probative value.”[63] Nor was it required to “weigh in favor of the evidence’s probative value the extent to which the other-acts evidence supported the victim’s credibility and rebutted the defense’s attack thereof.”[64]
Next, I question the majority’s criticism that the trial court “lumped” together all the other-acts evidence rather than considering each act separately. Neither the majority nor the prosecution cites any authority to support the proposition that a trial court must consider each other act separately when conducting an MRE 403 analysis.[65] Consequently, I see no basis for concluding *515 that the trial court made a legal error in this respect. For this reason, I believe the majority’s decision otherwise violates our often stated rule that “[a]n abuse of discretion involves far more than a difference injudicial opinion.”[66]
Finally, the majority remands for further proceedings for the trial court to consider whether evidence of Pullen’s previous indecent exposure is admissible under MRE 404(b). I fail to see how the trial court can apply MRE 403 to that evidence differently if it is admitted under MRE 404(b) rather than under MCL 768.27a.[67] Under either avenue of admissibility, MRE 403 requires exclusion if, among other things, the evidence’s “probative value is substantially outweighed by the danger of unfair prejudice . . . .”[68]
On remand, evidence of the prior indecent exposure may be admitted only under MRE 404(b). MRE 404(b) does not allow other-acts evidence to be admitted to show propensity or bad character. Therefore, if anything, the prior-indecent-exposure evidence will have less probative value under MRE 404(b) than it did when the trial court evaluated it under MCL 768.27a. Moreover, MRE 403 continues to apply with full force to that evidence. Conse *516 quently, there is no basis for concluding that the trial court’s MRE 403 balancing would come out differently.
The majority also summarily dismisses the trial court’s second stated basis for finding the other-acts evidence unfairly prejudicial to Pullen. After concluding that the other-acts evidence would be “highly probable” to prejudice the jury, the court stated:
The Court also finds that it would be fundamentally unfair and a violation of due process to force [Pullen] to defend accusations from over 20 years ago for which charges were never filed. [Pullen] is in an untenable position to try to disprove more serious and greatly dated charges. It is unlikely that he would be able to do so, and to require him to do so would be manifestly unjust.
The majority does not explain how this alternative basis for excluding the other-acts evidence also constituted an abuse of discretion. Instead, it suggests that the evidence in the 1989 police report alleging sexual abuse of Pullen’s daughter, while “equally prejudicial on this basis,” has “varying probative values.”[69] How is this relevant? Whether the introduction of 20-year-old evidence is “fundamentally unfair” and “manifestly unjust” has nothing to do with its probative value, and everything to do with its prejudicial effect. The trial court’s conclusion was inherently a determination that whatever the evidence’s probative value, it would be outweighed by its prejudicial effect and violate Pullen’s rights. Thus, that the evidence may have “varying probative values” does nothing to undermine the trial court’s ruling in this context.
Accordingly, I am not convinced that the Pullen trial court abused its discretion in conducting its MRE 403 balancing. I would affirm the Court of Appeals’ judgment.
*517 CONCLUSION
I agree with the majority that MCL 768.27a and MRE 404(b) irreconcilably conflict. However, I dissent from the majority’s conclusion that MCL 768.27a prevails over MRE 404(b). I would hold that MCL 768.27a is an unconstitutional legislative intrusion into the power of the judiciary. Accordingly, I would vacate the convictions in Watkins and remand the case for a new trial. I would affirm the lower court judgments in Pullen that excluded the other-acts evidence as substantially more prejudicial than probative under MRE 403.
Cavanagh and Hathaway, JJ., concurred with Marilyn Kelly, J.

 Const 1963, art 6, § 5.

 People v Pattison, 276 Mich App 613, 620; 741 NW2d 558 (2007); see People v Watkins, 277 Mich App 358; 745 NW2d 149 (2007) (following Pattison).

 Const 1963, art 3, § 2 provides that “[t]he powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.”

 Const 1963, art 6, § 1 provides that
[t]he judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house.

 Const 1963, art 6, § 5; see also Const 1908, art 7, § 5 (“The supreme court shall by general rules establish, modify and amend the practice in such court and in all other courts of record, and simplify the same.”), and Const 1850, art 6, § 5 (“The supreme court shall, by general rules, establish, modify, and amend the practice in such court and in the circuit courts, and simplify the same.”).

 See, e.g., In re Koss’ Estate, 340 Mich 185, 189-190; 65 NW2d 316 (1954).

 People v Mitchell, 402 Mich 506, 518; 265 NW2d 163 (1978); Perin v Peuler (On Rehearing), 373 Mich 531, 541; 130 NW2d 4 (1964).

 McDougall v Schanz, 461 Mich 15; 597 NW2d 148 (1999).

 Id. at 29.

 Id. at 30, quoting Kirby v Larson, 400 Mich 585, 598; 256 NW2d 400 (1977) (opinion by Williams, J.) (citation and quotation marks omitted).

 McDougall, 461 Mich at 27, citing Shannon v Ottawa Circuit Judge, 245 Mich 220, 223; 222 NW 168 (1928).

 Pattison, 276 Mich App at 619-620.

 The McDougall test does not predetermine the conclusion reached by the majority that MCL 768.27a is substantive. However, as I stated in my dissent in People v Hickman, 470 Mich 602, 613 n 3; 684 NW2d 267 (2004), "I did not then, nor do I now, agree with the majority opinion in McDougall.” Rather, I continue to agree with the analysis in Justice Cavanagh’s dissenting opinion in McDougall, 461 Mich at 37-72, which I signed.
For this reason, it is difficult to know where to begin: with my disagreement with the McDougall test itself or merely with this Court’s application of it. Because McDougall is binding precedent, but proper application of the McDougall test nevertheless supports my conclusion that MCL 768.27a is not “substantive,” I begin by applying McDougall. However, as I conclude later in this opinion, there are numerous reasons why this Court should discard the McDougall test.

 McDougall, 461 Mich at 30 (citations and quotation marks omitted).

 This point is aptly demonstrated by illustration. Consider a statute that states only that everyone present in a courtroom must, before proceedings commence, recite the Pledge of Allegiance. Such a statute would be an unconstitutional regulation of “practice and procedure” because it would establish a mandatory prerequisite to the “judicial dispatch of litigation.” This would be true even if the Legislature identified some “substantive” policy considerations unrelated to the “judicial dispatch of business,” such as encouraging patriotism, as its motivation for enacting the statute. The Legislature is free to try to achieve that substantive goal by other means, but not by dictating a mandatory procedure in the courts.

 See Joiner & Miller, Rules of practice and procedure: A study of judicial rule making, 55 Mich L R 623, 634 (1957) (“[T]he word ‘practice’ . .. clearly embraces all ‘how,’ leaving to the legislature ‘what’ in substantive law creating legal rights and duties.”).

 It is noteworthy that the Legislature enacted MCL 768.27a at the same time that it passed other laws in an effort to protect children from convicted sex offenders. The great majority of these provisions caused substantive changes in the law. See, e.g., 2005 PA 133, creating MCL 722.115e, which made it a crime for an employee of a childcare center to fail to report that he or she had been arraigned for certain criminal offenses involving children.
Moreover, the Legislature has enacted numerous substantive laws advancing many of the same policy considerations the majority identified in this case. See, e.g., 2006 PA 165, amending MCL 750.520b to increase the penalty for first-degree criminal sexual conduct against a minor under 13 years of age by repeat offenders under certain circumstances. Thus, if the Court were to hold MCL 768.27a unconstitutional, it would not greatly deter the Legislature from advancing its policy goals.

 See also Pattison, 276 Mich App at 620, which identified “the Legislature’s policy decision” behind MCL 768.27a as what juries should be allowed to consider by regulating what evidence courts may admit.

 Bush v Shabahang, 484 Mich 156, 166-167; 772 NW2d 272 (2009), citing Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999).

 United States v Foskey, 204 US App DC 245, 251; 636 F2d 517 (1980), quoting United States v Myers, 550 F2d 1036, 1044 (CA 5, 1977); see also *502 People v Allen, 429 Mich 558, 566; 420 NW2d 499 (1988) (“[I]n our system of jurisprudence, we try cases, rather than persons . . . .”).

 McDougall, 461 Mich at 30.

 See MCL 760.1 (“This act shall be known and may be cited as ‘The Code of Criminal Procedure.’ ”); see also People v Glass (After Remand), 464 Mich 266, 282 n 13; 627 NW2d 261 (2001) (“[T]his Court’s authority regarding the rules of practice and procedure derives from Const 1963, art 6, § 5, and is not subservient to the Code of Criminal Procedure.”).

 Ante at 476.

 Const 1963, art 6, § 5.

 State v Gresham, 173 Wash 2d 405; 269 P3d 207 (2012).

 Id. at 431.

 Id. at 425, quoting Wash Rev Code 10.58.090.

28 Opinion of the Justices (Prior Sexual Assault Evidence), 141 NH 562, 574, 578; 688 A2d 1006 (1997); see also State v Mallard, 40 SW3d 473, 483 (Tenn, 2001) (“[T]he legislature can have no constitutional authority *504 to enact rules, either of evidence or otherwise, that strike at the very heart of a court’s exercise of judicial power .... Among these inherent judicial powers are the powers to hear facts, to decide the issues of fact made by the pleadings, and to decide the questions of law involved. As an essential corollary to these principles, any determination of what evidence is relevant, either logically or legally, to a fact at issue in litigation is a power that is entrusted solely to the care and exercise of the judiciary.”) (citation omitted).

 Perin, 373 Mich 531.

 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), ch 60, p 403 (referring to the parol-evidence rule and the statute of frauds as examples of evidentiary rules that appear to be procedural but are substantive in nature); see also Joiner & Miller, 55 Mich L R at 651 (labeling the doctor-patient privilege as a substantive evidentiary rule).

 See Comment, Rules of evidence: An exercise of constitutional power by the Michigan Supreme Court, 1980 Det C L R 1062, 1085 (indicating that whether a rule has an effect on in-court or out-of-court behavior is relevant to evaluating whether it is substantive or procedural); see also Baughman, The emperor’s old, clothes: A prosecutor’s reply to Mr. Leitman *505 concerning exclusion of evidence for statutory violations, 1999 L R Mich St U Det C L 701, 716 (concluding that “privileges are substantive in nature” in part because “[t]hey seek to control out of court behavior” and the purpose of the rule governing them “is non-adjudicative”).

 Ante at 478 (emphasis omitted).

 Ante at 478 (emphasis omitted).

 MCL 600.2157.

 MCL 767.5a(2).

 MCL 600.2156.

 For similar reasons, the majority misses the point when it concludes that my approach would result in court rules yielding to statutes that are based on some policy concerns but not others. Nor is it an accurate statement of my position that I believe that “legislative policy concerns are irrelevant.” Ante at 479. The legislative policy considerations reflected in a statute’s function are relevant. As noted, the function of statutes governing privileges is to create a substantive right of confidentiality between certain individuals. But the majority fails to grasp that a statute’s function, the creation of those privileges, is far different from the Legislature’s policy reasons for enacting it. If the function of a statute born of policy concerns about high recidivism rates among sexual offenders of children is substantive, it will be no less valid than the *506 privilege statutes. See, e.g., note 17 of this opinion (identifying statutes altering substantive law that advance the policy considerations identified by the majority). Thus, it is entirely sensible that my approach might result in court rules yielding to statutes “grounded in some policy concerns . . . but not others!.]” Ante at 479. The policy reasons behind the statute are simply not part of the inquiry.

 The majority’s response to this argument is to cite a single privilege statute that establishes spousal privilege solely in the context of court proceedings.

 MCL 750.520j.

 See ante at 480 & n 75, citing People v McKenna, 196 Colo 367, 371-372; 585 P2d 275 (1978).

 McKenna, 196 Colo at 373.

 The majority’s attempt to distinguish Mallard and Opinion of the Justices is not persuasive. Those decisions were not based solely on the determination that the statutes at issue restricted courts’ discretion to ascertain the relevancy of evidence. Rather, they also focused on the fact that the statutes at issue would undermine the standards for the *507 admissibility of certain types of evidence set by court rules. This is precisely what MCL 768.27a does. See also Paine, Significant differences between state and federal evidence law, 42 Tenn B J 28, 28 (2006) (concluding that Tennessee’s version of MCL 768.27a is likely unconstitutional under Mallard).

 Because I reach this conclusion, I need not address whether MCL 768.27a is an unconstitutional legislative intrusion into the judiciary’s authority to exercise “[t]he judicial power of the state” under Const 1963, art 6, § 1.

 See McDougall, 461 Mich at 62-63 (Cavanagh, J., dissenting) (“The effect of the majority’s decision, however, is to invite the Legislature to trample whatever rules of the judiciary might arguably concern something other than judicial efficiency, and the majority’s decision herein offers so little to support its conclusion that the matter discussed today is substantive that it invites legislative ‘questions’ far more fanciful than the ones above... . All the Legislature need do is determine some *508 questions outside the ‘mere dispatch of judicial business,’ and the Court’s own regulation of its own judicial function may be cast aside.”).

 Ante at 474-475, quoting McDougall, 461 Mich at 31 (citation and quotation marks omitted).

 Ante at 473-474.

 And, it bears repeating, that authority is scant. See McDougall, 461 Mich at 56 (Cavanagh, J., dissenting) (noting that the sole bases for the majority’s opinion were “a Court of Appeals opinion of recent vintage and identical authorship as the majority opinion,” “a 1957 law review article,” and “dicta offered by Justice Williams in Kirby [400 Mich at 598], in a portion of his opinion that failed to garner the allegiance of a majority of the Court”).

 Ante at 475.

 See, e.g., Joiner & Miller, 55 Mich L R at 635 (“[A] clear-cut distinction [between substance and procedure] for all purposes is impossible of formulation.”), citing Riedl, To what extent may courts under the rule-making power prescribe rules of evidence?, 26 ABAJ 601, 604 (1940); Seisinger v Siebel, 220 Ariz 85, 92-93; 203 P3d 483 (2009) (observing that “the precise dividing line between substance and procedure ‘has proven elusive’ ” and that “[statutes relating to evidence present particularly difficult problems, as such statutes, like rules of evidence, often have both substantive and procedural aspects”); State v Pavelich, 153 Wash 379, 383; 279 P 1102 (1929) (noting that “the distinction between procedure and substantive law is not always well understood, and is sometimes vague and indistinct”).

 McDougall, 461 Mich at 36 (“We appreciate the difficulty that attends the drawing of the line between ‘practice and procedure’ and substantive law.”).

 See, e.g., Levin & Amsterdam, Legislative control over judicial rule-making: A problem in constitutional revision, 107 U Pa L R 1, 23 (1958) (“There is a substantial risk in ceding too much to the legislature, particularly if in so doing courts are to abdicate completely from the exercise of any rule-making authority in the ceded area. The point is illustrated in considering a reformulation of the Riedl test by Joiner and Miller. While asserting that their version ‘approximates’ Riedl’s, Joiner *510 and Miller propose something very different. The question for them is whether a particular area involves ‘something more than the orderly dispatch of judicial business.’ If it does, then it is not an appropriate subject for treatment by court rule. The difficulty with this position is that it excludes too much.”); Lawson, Modifying the Kentucky rules of evidence — A separation of powers issue, 88 Ky L J 525, 570 & n 259 (2000) (criticizing a standard almost identical to that adopted by the McDougall majority — allowing courts to promulgate certain evidentiary rules as long as “ ‘there is no other policy as established by the state involving matters other than the orderly dispatch of judicial business’ ” — as “excluding too much of the law from the procedure category” and noting that “many evidence rules have both substantive and procedural elements and that insistence upon procedural purity would unduly restrict judicial rulemaking authority”) (citation omitted); Dickey, The Florida evidence code and the separation of powers doctrine: How to distinguish substance and procedure now that it matters, 34 Stetson L R 109, 123 (2004) (recognizing as one problem of the McDougall test that “treating rules of evidence as procedural only if they relate to court administration seems too narrow”).

 Levin & Amsterdam, 107 U Pa L R at 23-24 (noting that the “orderly dispatch of judicial business” test, if “[ajpplied rigorously,” “would exclude not only such matters as venue and costs, but also such questions as the procedural effect of presumptions. This is not to suggest that the proponents of the test would so apply it. Indeed, they recognize that theirs is not a formulation which should be expected to answer all questions of rule-making authority.”) (emphasis added), citing Joiner & Miller, 55 Mich L R at 629; see also Joiner & Miller, 55 Mich L R at 653 (“The power of a court to establish rules of practice is very broad indeed.”).

 Joiner & Miller, 55 Mich L R at 635-636.

 3 Honigman & Hawkins, ch 60, p 403.

 Joiner & Miller, 55 Mich L R at 651 (“Most rales of evidence involve only the orderly dispatch of judicial business and should be subject to court rule.”); Opinion of the Justices, 141 NH at 570 (“Rules of evidence, in most instances, relate only to practice and procedure.”); State ex rel Collins v Seidel, 142 Ariz 587, 590; 691 P2d 678 (1984) (“Rules of evidence have generally been regarded as procedural in nature.”), citing Ammerman v Hubbard Broadcasting, Inc, 89 NM 307, 310; 551 P2d 1354 (1976).

 Ante at 478.

 See also McDougall, 461 Mich at 60-62 (CAVANAGH, J., dissenting) (citing many of the Michigan Rules of Evidence that might be said to be based on a “policy judgment” and, consequently, subject to legislative abrogation).

 See id. at 53 n 21 (Cavanagh, J., dissenting) (“The majority’s view effectively allows the Legislature to determine, at its will, what might be substantive, and thus, when it is inclined, to override a judiciary decision with its own preferences. ... The majority’s approach, however, is so *512 ill-defmed as to allow the Legislature to change its cards as it sees fit.”); Glicksman, Separation of powers conflict: Legislative versus judicial roles in evidence law development, 17 TM Cooley L R 443, 456-457 (2000) (“Should the McDougall case ever find uniform application, many of our rules of evidence that contain and reflect policy judgments, such as the hearsay rule, character evidence rules, subsequent repair proofs, impeachment by prior conviction, and compromises of medical payment expenses, could be changed by the legislature by merely suggesting that they are substantive law and remain free targets for change.”); State v Sypult, 304 Ark 5, 13; 800 SW2d 402 (1990) (Turner, J., concurring) (“[I]t is not sufficient to say simply that we will defer to legislative enactment on all ‘matters of public policy’; in fact, all enactments of the General Assembly become matters of ‘public policy.’ ”).

 See McDougall, 461 Mich at 30, citing 3 Honigman & Hawkins, p 404, and Joiner & Miller, 55 Mich L R at 650-651. As noted in the text and footnotes throughout this opinion, the McDougall test (as applied by the majority) is utterly unfaithful to those sources. Accordingly, it is a test born both of the McDougall majority’s misapprehension of those sources and its own imagination.

 People v VanderVliet, 444 Mich 52, 81; 508 NW2d 114 (1993).

 People v Babcock, 469 Mich 247, 269; 666 NW2d 231 (2003) (holding that an abuse of discretion occurs when a trial court chooses an outcome that falls outside the range of principled outcomes).

 See MRE 40403) (“Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.”).

 Ante at 492.

 Ante at 492.

 I do not cite authority for my position either. However, it is the majority, in making new law on this point, that bears the burden of providing authority. It attempts to rely on the language of MRE 403, but that reliance is dubious. First, one can just as easily read MRE 403 as providing that “[all other-acts] evidence may he excluded if its probative value is substantially outweighed by the danger of unfair prejudice .. . .” (Emphasis added.) Second, the majority selectively quotes the rule by *515 omitting all the language preceding “needless presentation of cumulative evidence” to holster its conclusion that the rule’s language supports its conclusion. But the “needless presentation of cumulative evidence” is hut one basis for finding the evidence excludable.

 Alken-Ziegler, Inc v Waterbury Headers Corp, 461 Mich 219, 227; 600 NW2d 638 (1999), citing Williams v Hofley Mfg Co, 430 Mich 603, 619; 424 NW2d 278 (1988).

 The majority also appears to suggest that the MRE 403 balancing would come out differently because the trial court would evaluate the evidence of the indecent exposure independently of the other-acts evidence. I disagree that reevaluation is necessary because, as previously noted, I do not agree with the majority that the trial court improperly “lumped” together the other-acts evidence.

 MRE 403.

 Ante at 495-496 n 97.